GEORGE M. CHAPMAN, Executor of EUNICE CHAPMAN, deceased, v. JOHN W. BROOKS and others.

PLEDGE. A creditor may assign the principal debt to a third person, and give him the benefit of any pledge which he holds to secure the payment of such debt.

PLEDGOR. So long as nothing is done to deprive the pledgor of the right to redeem on payment of the amount due on the principal debt, the pledgor is not injured.

*It seems*, that evidence of the declarations of a witness contrary to the testimony given by him upon a material point, may be given to impeach his credit, though the rule is otherwise when the questions are put to the witness to impeach his general character. Per DENIO, Ch. J.

THIS action was brought to recover the amount of two promissory notes, dated April 15th, 1857, payable to the order of Isaac L. Hunt, six months after date, at 215 Pearl street.

The complaint contained an averment that the plaintiff was then the lawful owner and holder of the notes, and that the defendants were indebted to her; therefore, &c.

The defendants, in their answer, deny that the plaintiff ever purchased the said notes, and also that plaintiff is the owner and holder of them, or either of them, and they aver payment of the notes to the holder before any transfer to the plaintiff. Upon the trial the defendants proved payment of the amount of the notes, to Isaac L. Hunt, the payee, at 215 Pearl street, on the 28th January, 1858, in part cash, in part other notes of Gordon, Brooks & Backus, and an abatement of twenty-five per cent. The notes of Gordon, Brooks & Backus were subsequently paid. At the time of the settlement, the notes now in suit were not produced or surrendered.

It was also proved that at the time of the settlement, the notes in suit were held by George M. Chapman, as collateral security for moneys loaned by him to Isaac L. Hunt, in 1857; that George M. Chapman held the notes, in May, 1858, at which time Hunt had a settlement with Chapman in

regard to the loans. That Hunt informed George M. Chapman of the settlement, about the time it was made, and gave to Chapman two of the notes received from Gordon, Brooks & Backus, for $806.67, which notes were afterwards paid, and the proceeds paid to Chapman, and credited by him to Hunt in their account. That during 1857 Chapman had discounted some notes for Hunt, besides those which were given as collaterals on other notes; and George M. Chapman testified, the two notes of Gordon, Brooks & Backus were brought to him as collateral for a subsequent loan, before May, 1858. At the time of the settlement, in May, 1858, Hunt gave a memorandum note for $20,880.39, dated 5th May, 1858, payable to G. M. Chapman & Co., which was to be in full for all memorandum checks due the firm, or either of them, dated prior to 5th May, 1858; and there was annexed to the note a list of collaterals, among which were the two notes in suit, and two of the notes received by Hunt from Gordon, Brooks & Root, on the settlement with Hunt, which were afterwards left with George M. Chapman.

In March, 1860, there was another settlement, and a new list was made up of the collaterals then held by Chapman for Hunt's indebtedness, in which were the notes in suit. After Hunt had testified that he informed Chapman of the settlement he had made with the defendants, he was recalled and examined by the plaintiff as to a conversation between him and Chapman in regard to the notes in suit, to which the defendants objected, which objection was overruled, and the defendants excepted. This alleged conversation was in 1860, and all of it was denied by Hunt. Chapman was then called and examined as to the conversation, and stated that Hunt then told him these notes had been paid to him, and he had used the money; that he, Chapman, told him he had collected the money in fraud of his mother. To both questions the defendants excepted.

It was also proved by Chapman, that he and his mother were in partnership; that she advanced the capital and they divided the profits. That he made the loan in suit with his mother's money; that Hunt requested him only to keep one

account, and that he and his mother would keep their accounts between themselves. He further stated he never delivered up any collaterals to Hunt until he received others in their place.

The defendants requested the court to charge the jury, if the notes in the suit were pledged to the firm of G. M. Chapman & Co., the plaintiff could not maintain the action. The judge refused, and the defendants excepted.

The jury found a verdict for the plaintiff, which was affirmed by the General Term, and the defendants appealed to this court.

*G. N. Titus,* for the appellant.

I. The court erred in overruling the several objections of the defendants' counsel to the questions asked of Isaac L. Hunt and George M. Chapman, in regard to a conversation between them in the summer of 1860, and in admitting the testimony of George M. Chapman and Carlton Smith as to that conversation.

1. The alleged conversation between Hunt and Chapman, in the summer of 1860, was *res inter alios acta*, and inadmissible as evidence against these defendants in any form or for any purpose. (*Mitchell* v. *Webb*, 17 Penn. [5 Harris], 339.)

2. The questions were improper, and the testimony in regard to that conversation was inadmissible for the purpose of discrediting Hunt. He was called as a witness by the plaintiff, and she could not discredit him. (Bull. N. P., 297; 1 Phil. Ev., 308, 309.)

The questions objected to were not asked upon cross-examination of this witness; if they had been, several of them were objectionable, as they related to his supposed statements about matters foreign to the issue on trial, to wit, his use of the money received in payment of the notes; also to Chapman's own statements.

It is a well settled rule, that a witness cannot be cross-examined as to any fact which, if admitted, would be collateral and irrelevant to the issue, for the purpose of contradicting him by other evidence, and in this manner to discredit

his testimony. (1 Phil. Ev., 272; *Harris* v. *Wilson*, 7 Wend., 57.)

If Hunt had authority to collect the notes, the use he made of the money was immaterial, and his admissions or statements on that subject, in the summer of 1860, were irrelevant to the issue.

3. The questions propounded to George M. Chapman were leading, and improper even for the purpose of discrediting Hunt.

Whether the question between two witnesses be a question of credit or of mere memory, leading is equally objectionable.

Mr. Phillipps, in his Treatise on Evidence, says:

"If the question is one of credit, then it is undoubtedly due *to the person whose veracity is impeached,* that *the contradictory statement* supposed to have been made by him, should be distinctly proved *without the aid of leading questions, and without any undue influence.*"

If the witness attempted to be discredited, denies having made the statements inquired of, and a witness is called to prove that he did, the particular words must not be put, but the witness must be required to relate what passed. (1 Phil. Ev., 269–271.)

4. Chapman was permitted not only to answer leading questions, and to state Mr. Hunt's admission as to his use of the money, but to testify to his own declarations in relation to the alleged impropriety of Mr. Hunt in that matter.

Chapman's declarations were inadmissible for any purpose; so was his testimony in regard to the admission of Mr. Hunt.

The supposed contradictory statement of the witness, whose veracity is impeached, must be of a material fact, relevant to the issue on trial, or the testimony is inadmissible. (1 Phil. Ev., 272; 1 Greenl. Ev., p. 602, § 462.)

The plaintiff's counsel, after proving that Hunt said in that conversation, that the notes had been paid to him, which was consistent with his statement previously given upon the trial, interrogated Mr. Chapman about matters not

involved in the issue, in reference to which no inquiry has been made by the defendant, and thus put in evidence the declarations of Chapman, made more than two years after Hunt had notified him of the settlement of the notes in suit.

The defendants had proved Hunt's authority to collect these notes, if the jury credited his testimony rather than Chapman's.

They proved notice to Chapman of their settlement in March, 1858, no objection thereto being made until the summer of 1860, at which time Chapman says he first heard of their payment.

Any impeachment of Hunt's veracity, in view of this conflict of testimony, was prejudicial to the defendants' rights.

II. The court erred in rejecting the testimony of John A. Hatt, which was offered to prove Hunt's authority to collect the notes in suit.

1. It is a familiar rule of law, that an acquiescence in the assumed agency of another, when his acts are brought to the knowledge of the principal, is equivalent to express authority. (2 Kent Com., 7th ed., marg. pag., 614; Story on Agency, §§ 54, 56; *Cairnes* v. *Bleecker*, 12 Johns., 300; *Com. Bank of Buffalo* v. *Warren*, 15 N. Y., 577.)

Chapman's acquiescence in the settlement of these notes, after the notice to him proved by Hunt, established the agency and completed the proof of payment.

2. Hunt's authority to collect could also be established by proof that Chapman was in the habit of intrusting to him, for collection, the collateral notes which had been received from him.

The plaintiff gave evidence on this point, and the defendants, in offering Hatt's testimony, were following up the line of proof which she had introduced.

The testimony was improperly excluded.

III. The plaintiff did not establish, upon the trial, any transfer to her of the notes in suit, nor that she was the owner of them.

1. They were pledged, with other notes, either to George M. Chapman, or to George M. Chapman & Co., as collateral

security for money loaned to Mr. Hunt; and whether pledged to Chapman or to his firm, neither of them had any right or anthority to transfer them to the plaintiff.

As pledgee of the notes, neither of them had any rights therein, except to collect them on account of the loan made thereon. (*Wheeler* v. *Newbold,* 16 N. Y., 393.)

2. The plaintiff did not discount these notes. The proof was conclusive that money was loaned upon them as collateral, and that the money so loaned was the money of the firm.

IV. The court erred in refusing to charge the jury that if the notes in suit were pledged to the firm of G. M. Chapman & Co., the plaintiff could not maintain this action.

1. The complaint alleges and the answer denies that the plaintiff is the lawful owner of the notes in suit.

The denial of the answer is not met by proof that the notes were pledged to a firm of which the plaintiff was a member. If the jury had found as a fact that the notes were pledged to G. M. Chapman & Co., this action could not be maintained. Mrs. Chapman could not have been the lawful owner, nor the real party in interest, and the jury should have been so instructed by the judge. (*Wheeler* v. *Newbold,* 16 N. Y., 392.)

2. The law requires that the action shall be prosecuted in the name of the real party in interest. The members of a firm constitute the " real party in interest " within the meaning of section 111 of the Code.

At the time of its enactment, all partners were bound to join in a suit for the collection of a partnership debt. (1 Chit. Pl., 12, 15; *Dobb* v. *Halsey,* 16 Johns., 34; *Armine* v. *Overseers of the Poor, &c.,* 4 Wend., 406; *Secor* v. *Keller,* 4 Duer, 416.)

That rule of pleading has been embodied in the Code, sections 111, 113.

3. There is no proof that the firm of G. M. Chapman & Co. has been dissolved, although they ceased importing in 1855.

4. The language of section 111 of the Code is imperative. The objection that its mandate is disregarded cannot be deemed waived under section 148 if not taken by answer.

By omitting to instruct the jury as requested, the court in effect withdrew from their consideration the question, whether "Isaac L. Hunt indorsed the notes," *    *    * over to G. M. Chapman & Co., as collateral security for the moneys loaned upon "his memorandum check, when the finding of that fact by the jury would have been fatal to the plaintiff's right of action.

The refusal of the court to charge the jury as requested was error.

V. The judgment should be reversed, and a new trial granted. (*Whitney* v. *Lynde*, 16 Vt., 579 ; 32 Barb. S. C., 25 ; *Van Hoesen* v. *Van Alstyne*, 3 Wend., 75.)

*James Emott*, for the respondent.

I. The plaintiff had a right to examine Hunt as to the statements sought to be proved by the questions found at folios 70, *et seq.*

This was not as to matters collateral and irrelevant.

The defendants claimed that Hunt had received satisfaction of the notes from them, and that Chapman had adopted and ratified his acts.

Hunt so testified directly to a ratification by Chapman, and the defendants showed that the notes of Gordon, Brooks & Backus, given on such settlement, had been indorsed by G. M. Chapman & Co., which fact was claimed to corroborate Hunt's testimony.

Also, the defendants claimed to show that because no steps were taken by plaintiff to collect prior to 1860, that the plaintiffs had, therefore, regarded the notes as settled.

It was, therefore, proper to contradict Hunt's testimony by showing statements made by him inconsistent with his evidence, that Chapman had acquiesced in the settlement, after being informed of it, by silence, by the reception of the amount received, and by delay and neglect in commencing legal proceedings to enforce the claim.

The form of the question was correct.

They were necessarily leading, the inquiry being as to the precise words used.

Again, if the question had been "what conversation passed," without the particular words being put, other and improper evidence might have been introduced from the answers given.

The questions are in accordance with the common practice on trials:

At all events, no special objection was taken by defendants, and the verdict cannot be disturbed upon general objection, when, had the objection been special, it might have been obviated at circuit.

II. The request was for the charge of the judge upon a point as to which there was absolutely no evidence whatever in the case.

There was no allegation that the notes were ever the property of G. M. Chapman & Co., in the answer. Hunt testifies, "they were held by George M. Chapman;" he reiterates it with the utmost distinctness. Again, at the close of the testimony, Hunt reasserts that the transaction was with "George M. Chapman alone." "I did not hear George M. Chapman speak of the firm of G. M. Chapman & Co., during the year 1857, as being a firm then in existence," and finally, he says, "I never received money from G. M. Chapman & Co." The memorandum is of "notes in the hands of G. M. Chapman." There is no evidence bearing upon this point, except where the note is made payable to G. M. Chapman & Co., and the account or list of collaterals is headed, "left with G. M. Chapman & Co."

But the court will particularly observe that the note states that it is in full for amount "due said firm, or either member thereof," and that the account or list was so made out as expressly testified by Chapman, and that without contradiction by Hunt or any witness, at Hunt's request, and was to comprise all claims, both of G. M. Chapman and of his mother, the plaintiff, and that at the time, Chapman offered to separate the accounts.

The court will, of course, distinguish the notes in suit from the notes of Gordon, Brooks & Backus, which were confessedly given to G. M. Chapman & Co. This may be fully

tested by the court, by examination of the case, and it is confidently claimed by the respondent, that there is no evidence in the case which would have supported a recovery, had Chapman & Co. been plaintiff instead of Mrs. Eunice Chapman.

INGRAHAM, J.   The exceptions to the decision of the court in overruling the objections of the defendants' counsel to the questions asked of Isaac L. Hunt and George M. Chapman in regard to a conversation between them in the summer of 1860, are not well taken.   Hunt had been examined by the defendants, and in that examination he had stated that he had informed George M. Chapman of the settlement he had made with the defendants of the notes in suit, about the time the settlement was made, when he gave Chapman the two notes of Gordon, Brooks & Backus, in 1858.   After the defendants rested, the plaintiff recalled Hunt and asked him as to this conversation with Chapman in 1860.   It was admissible to show that Hunt had made a different statement of this transaction at another time, and by this conversation in 1860, to show that his former statement was untrue.

The objections that the questions were leading, were not taken on the trial, and are no ground of objection here; and if the object was to contradict him, it was proper to put the question directly to the witness, before the contrary statements could be proved by another witness.   The whole purport of the examination was to show a different account of the transaction, at that time, from what he gave on the direct examination, and to discredit Hunt's statement that he acted with the knowledge and assent of Chapman and with authority to collect the notes.

The witness Holt was asked what Chapman told him to do with other notes that Chapman left with him for Hunt. This was excluded.   It was in regard to a matter foreign to the controversy in this action.   What Chapman told him to do with other notes could not affect the plaintiff's claim to these notes.

Whether the plaintiff was or was not the owner and holder of the notes in suit was a question of fact for the jury.   The

plaintiff had the possession.   In addition, George M. Chapman had testified that he loaned his mother's money to Hunt; that he and she were in partnership, and she advanced the capital.

If the money loaned belonged to the plaintiff, her right to collect the notes, which were collateral to the loan, is undoubted.   If the money belonged to the firm, there is no doubt as to the right of the firm, in distributing the assets, to assign one portion of the debts to one member and another portion to the other.   The securities pledged would follow the original loan in the hands of either of the partners.   It would not be a transfer of the pledged securities vitiating the pledge.   There can be but little doubt that the accounts were all kept together at the request of Hunt; Chapman so testified, and the note given on the settlement purported to be given to the firm, and appropriated the collaterals to pay all memorandum checks due the firm or either of the members.   Under such an appropriation by Hunt, a third party can hardly be allowed to dispute the title of a member of the firm upon the ground that the pledge had been illegally transferred.   These views dispose of the exception to the refusal of the judge to charge, that if the notes were pledged to the firm of G. M. Chapman & Co., the action could not be maintained.   The case of *Wheeler* v. *Newbold* (16 N. Y., 392) does not conflict with this note.   That case only holds that a creditor has no right to sell a note pledged as security at a loss, but must wait till it becomes due; but it is by no means an authority for the position, that a creditor may not assign the principal debt to a third person and give him the benefit of the collateral securities to secure the payment of the principal debt.   So long as nothing is done to deprive the pledgor of the right to redeem on payment of the amount due on the principal debt, the pledgor is not injured.

The evidence was sufficient to warrant the jury in finding that the original loan was the money of Mrs. Chapman; or, 2d. If the loan was to the firm, that, in the division of the assets, these securities were set off to Mrs. Chapman for moneys advanced by her to the firm.   Or, if originally loaned

by G. M. Chapman, he could assign to Mrs. Chapman the
note for the principal debt, and the collateral securities would
inure to her benefit and be applicable to the payment of the
amount due until wholly paid.

There was no error in the ruling of the judge in his charge
or refusal to charge.

The judgment should be affirmed.


DENIO, Ch. J.   The appeal in this case presents questions
upon the ruling of the judge in admitting certain inquiries
which were objected to by the defendants' counsel, and reject-
ing a question put by the defendants' counsel to a witness,
which was objected to by the plaintiff's counsel, and in
declining to charge in favor of a position of the defendants.

1. The action was brought to recover the amount of two
promissory notes made by the defendants to the order of
Isaac L. Hunt.   The plaintiff sued as indorsee of Hunt, who
had indorsed them in blank.   The notes were at six months,
and matured August 15th, 1857.   There was no question
but that Hunt negotiated both notes before their maturity.
The defense was, that after such negotiation and after the
maturity of the notes, the makers entered into a compromise
with Hunt, the payee, paying a part in money, giving other
notes with another name for a further part which had been
paid, the residue being abated to effect the compromise.
George M. Chapman, to whom Hunt had negotiated them,
received them from him as collateral security for money
loaned.   The defendants attempted to show that Chapman
was cognizant of and assented to the compromise, and that
he received two of the new notes given upon that arrange-
ment on account of or as a substitute *pro tanto* for the notes
in suit.   Hunt, who was examined as a witness on behalf of
the defendants, swore that he informed Chapman of the set-
tlement he had made with the defendants about the time of
making it, and the witness then gave him the two notes
which were received on the compromise, which were passed
to the credit of the witness.   It was also shown that Chap-
man about this time held a large number of notes, besides

these sued on, which he had received from Hunt, which were business notes in-his hands, and which he had delivered to Chapman as collateral security for other moneys loaned him, and moreover that there was a practice by which Hunt occasionally withdrew some of the collateral notes and substituted others with the assent of Chapman. The theory of the defense appears to have been, that the notes sued on were adjusted by Hunt with the makers, and that that adjustment was assented to by Chapman at the time, or soon after it took place, and that two of the notes received on the compromise, which have been subsequently paid to Chapman, were received by him on account of the notes in suit. Chapman, who was examined as a witness for the plaintiff, denied this, and testified that until the summer of 1860, he had no knowledge of the compromise, and that he did not assent to it. An issue was thus made between the two witnesses, on the point of Chapman's assent to the settlement which Hunt had made with the defendants. The plaintiff's counsel then undertook to show that at a certain place, during the summer of 1860, Hunt communicated to Chapman that he had arranged the notes with the defendant, the maker, in the manner stated, and had apologized for that act by saying that his necessities had driven him to it, and that Chapman reproached him severely for his conduct. A series of questions were addressed to Hunt by the plaintiff's counsel, with a view to show this state of facts, but Hunt answered negatively to all of them. The questions were objected to, and exceptions taken to the rulings by which they were admitted. The plaintiff's counsel recalled Chapman, who affirmed by his testimony the existence of the conversation, in substance, as mentioned; and another witness, who stated he was present at the time and place indicated, corroborated him. Exceptions were taken to the decisions by which this testimony was received against the objections of the defendants' counsel. It was competent for the plaintiff to discredit Hunt, by proving that he had made statements irreconcilable with his testimony, that Chapman had assented to the discharge of the notes sued on, soon after they were

compromised. The whole conversation inquired of, in the questions addressed to Hunt, and afterwards proved by Chapman and the other witness, would tend to contradict the former on a point material to the case. If he mentioned the settlement to Chapman, for the first time, in 1860, which was long after the alleged ratification, and then apologized for his conduct, and if he made no answer to the reproachful language of Chapman, it could not well be true that the transaction had been long before made known to and been approved of by Chapman. The reproachful language used by Chapman on that occasion, had not of itself any relevancy except to show, by the omission of Hunt to justify himself by stating the fact, as he now alleged it to be, a tacit admission of his having, up to the time of the conversation, no authority or assent of Chapman to the transaction. Evidence of the declarations of a witness contrary to the testimony given by him upon a material point, may be given to impeach his credit, though the rule is otherwise as to questions put to a witness to impeach his general character. In that case the answer of the witness cannot be contradicted. (*Patchin* v. *The Astor Mutual Insurance Co.*, 3 Kern., 268.)

2. One Hatt was called as a witness, by the defendants' counsel, and testified, that he was in the business with Hunt in 1857, and that Chapman had, at same time, left with him collateral notes which he said he had received from Hunt. The witness was then asked to state what Chapman directed him to do with those collaterals, on the application of Hunt. The question was excluded on the objection of the plaintiff's counsel, and an exception was taken. *Prima facie*, what was said by Chapman, in connection with notes which had been transferred to him, as collateral security, other than the notes sued on, would have no bearing upon the present controversy, but would tend to raise an issue foreign to the one on trial. It is possible that it may have been intended to prove a course of dealing respecting notes which had been so taken, which would tend to show an authority in Hunt to settle the notes in suit with the makers; but such an intention could not, without explanation, be inferable from

the questions put. It frequently happens on trials, that subjects apparently irrelevant to the issue may be shown to be material, by connecting some other facts with them, showing a relation between the apparently immaterial matter and the issue in the suit. Where such is the case, it is the duty of the counsel to state the proposition which he proposes to establish, or the fact which he expects to prove, that the judge may see its bearing, and determine as to its materiality. The counsel did not pursue that obvious course in the present case, but contented himself with excepting to a decision overruling a question which presumptively had nothing to do with the merits of the case. The exception was not well taken.

3. The remaining point relates to the refusal of the judge to charge as requested by the defendants' counsel — that if the notes sued on were pledged to G. M. Chapman & Co., the plaintiff could not maintain the action. The notes were made payable to the order of Hunt, and were transferred by him under his indorsement in blank, which, of course, made them further negotiable by delivery without indorsement. The note was produced and given in evidence on the trial, by the plaintiff's counsel. This was sufficient presumptive evidence of a transfer to her. Whether, when it was negotiated by Hunt, the transfer was to G. M. Chapman & Co., or G. M. Chapman alone, or to Eunice Chapman, the plaintiff, was unimportant. If it was to her, no further transfer was necessary. If to the firm, or to G. M. Chapman, her possession of the paper was evidence that she had become the holder. The other evidence did not raise any question which would have enabled the jury to find against the allegation of a transfer to her. The proof was, that the firm of G. M. Chapman & Co. consisted of the plaintiff and the witness, G. M. Chapman. It was an importing house, but ceased doing business as importers in 1855, and the witness, Chapman, had the charge of settling up the business of the firm, and was collecting the large assets belonging to it, the whole capital belonging to the plaintiff, and half the profits to the witness. He swore that the loan to Hunt,

for which the notes were pledged, was of money belonging to the plaintiff; though for convenience only one bank account was kept, which I infer was in the name of the firm, or of G. M. Chapman. But a private account, as he said, was kept between the partners. If this testimony was accurate, when the money was drawn to make the loan, it was charged to her in the separate account, and the security became hers. This evidence was wholly uncontradicted, and the jury could not legally have found against its effect. It must, therefore, have been erroneous to submit a question upon it to the jury. But suppose the loan was of moneys of the firm, and the security when taken from Hunt became the property of the two partners. It was sued in the name of one of them, but if the defendant would take advantage of that circumstance, he should have set up the non-joinder in abatement. This was not done by denying, as the defendants did, that the plaintiff was the lawful holder or owner of the notes. But if he had set up the non-joinder, the evidence above mentioned, and the further testimony which was given, that E. M. Chapman, who was the plaintiff's agent, as well as the managing partner, directed the suit to be brought in her name, would have overcome the defense.

I conclude that none of the positions taken on the appeal are sustainable, and that the judgment should be affirmed.

All the judges concurring,

Judgment affirmed.