## In the Matter of the Accounting of the Executors of Francis Saltus.

No special *principle* is involved in this case. The *facts* involved, which cannot be profitably abbreviated from their statement in the opinion, are valuable as a guide to executors or to their counsel, in the administration of their trust.

*Tracy, Wait & Olmstead,* for the appellants.

*E. A. Doolittle, Spier & Nash,* for the respondents.

Grover, J. Upon the accounting before the surrogate, several items of credit, claimed by the appellants, against the estate, were disallowed. An additional credit, of $5,000, was given to the estate, on account of the sale, by the appellants, of the store and premises, 83 Murray street, to Caroline Saltus, a daughter of the testator, for the price of $20,000. No question was made before the surrogate, nor is any made here, but that the appellants had full power to sell and convey this property. The interest of the testator therein was that of lessee, for a term of years, from Trinity church. Upon the hearing before the surrogate, evidence was given as to the time of the sale, and as to the value of the property. It was claimed, upon the part of the appellants, that the sale was made in November, 1855 ; and the respondents claimed that it was not made until March, 1856. This was a material question, as the evidence showed that the property was rapidly rising in value ; and all the evidence tending to show that the appellants acted in bad faith related to a time subsequent to November, 1855. The evidence of the witness Gilbert M. Spier, of what occurred at an interview between him and Theodore Saltus, one of the appellants, in March, 1856, if true, shows that the sale had not, at that time, been made. Although there is some evidence tending to show that the sale was made the November previous, there is nothing of that certain, definite character, as to call for a reversal of the con-

clusion of the surrogate upon this point. Adopting the finding as to the time of the sale, and the evidence fully warrants the further finding, that the property was worth, at least, $25,000 at the time of the sale, and, with reasonable diligence, might have been sold for that sum. The addition made to the credit of the estate was, therefore, correct. (2 R. S. 525, § 8.)

As to the amount charged by the appellants as having been paid to Francis H. Saltus, I think the surrogate fell into an error. The will provides that the executors shall pay him the one-eighth part of the income of the residuary estate for life, and, at his decease, pay the said eighth to Francis Saltus Saltus. The surrogate wholly disallowed the charge, upon the ground that the executors had no right, by the will, to pay any of the principal to Francis H. The ground is correct, but does not apply to the whole sum so paid. Several years had elapsed from the death of the testator, at the time of accounting, and the residuary estate had earned more or less income, one-eighth of which the executors were required to pay Francis H. The decree should have allowed the appellants this eighth of the income on what had been paid to Francis H., and disallowed the other money so paid to him.

The most material item of credit claimed by the appellants, and disallowed by the surrogate, was the $41,557.01 charged on account of paying notes of the Peru Iron company. I think this charge properly disallowed. The Peru Iron company was a corporation, in which the testator owned the principal amount of stock. This stock, as I understand the case, by transfers, had become vested in Theodore Saltus. This circumstance is not material to the view I take of the question, except so far as the form of the account is concerned. This debt, charged as having been paid, consists mainly of drafts drawn by Saltus & Co. upon the iron company, and accepted by the latter, on account of advances made by the former for the latter. The debt was that of the iron company, and should have been paid by the latter. These advances were made by Saltus & Co., and the testator owned the capital of the firm, and six-eighths of the profits. If the

appellants were charged upon these drafts as drawers, and compelled to pay, it was their duty to have collected the amount from the iron company at once. From the facts appearing in the case, there is no doubt of the ability of the latter to pay. Should the surrogate have allowed this charge, it would have been his duty to see that the estate was credited the same amount for a debt against the iron company, for money paid, and its use. The only question presented, as appears before the surrogate, was, whether the estate was not bound to pay this debt for the benefit of Theodore Saltus, or Saltus & Co., who purchased the real estate of the company, and its stock from the executors. This, the estate was clearly not bound to do. That is the argument presented here for the allowance of this item to the appellants. Of course, had the iron company been insolvent and charged upon this paper, the executors would be entitled to credit for its payment; but that is not the question made by the parties. That question, as above remarked, is, whether the estate of the testator should pay this paper. That was the question decided by the surrogate; and his decision was correct.

It is claimed, by the appellants, that the surrogate erred in fixing the amount of personal estate, in the firm of Saltus & Co., for which the executors were accountable. That amount was a trifle over $149,000. This was shown by the books of the firm; and these books were *prima facie* evidence against Theodore Saltus, the principal acting executor, and a member of the firm. This sum was properly assumed by the surrogate; and it was incumbent upon the appellants to show what corrections, if any, should be made.

The above are the only questions argued in this court. A further examination shows that Henry Saltus was indebted to the estate in a sum exceeding the amount he was entitled to, as interest upon his residuary share. The surrogate was, therefore, right in not allowing a credit to the appellants for the sums paid him. His claim to interest upon his share should have been applied upon his indebtedness to the estate.

The judgment should be affirmed.

Affirmed.