(19 App. Div. 478.)

### In re PIERSON'S ESTATE.

(Supreme Court, Appellate Division, Third Department. July 6, 1897.)

1. CONVERSION—NECESSITY OF DEMAND.

When a broker pledges stock, purchased by him for a customer, for an amount greater than his lien thereon, and afterwards becomes insolvent, so that the customer cannot obtain the stock upon payment of the amount due the broker, he thereby converts the same, and no demand for the stock by the customer is necessary.

2. ESTOPPEL—STATEMENT OF ACCOUNT.

When a stockbroker makes entries, in his books, of purchases of stocks for his customers, and renders to them statements showing that he has bought and holds for them certain stocks, giving names, prices, and the standing of the account, the customers, believing and acting upon such statements, may treat them as true, and the broker is estopped to deny them.

3. SAME—BY AGREEMENT.

Several parties, claiming to be creditors of an insolvent firm, and also of a deceased member thereof individually, entered into a stipulation, in a suit brought to determine their rights, by which it was agreed that the claim of one of them, M., constituted an individual obligation of the deceased partner, entitled to payment out of his estate in preference to claims upon him as a member of the firm. In consequence of this stipulation, M. made no claim upon a fund of firm assets, out of which most of the other creditors received a dividend which was increased by his withdrawal. *Held* that, by such stipulation, the creditors who had received such dividend were estopped to deny, as against M.'s claim to a preference, that their claims against the estate of the deceased partner arose as firm creditors only; but other creditors who had received no dividend under the stipulation were not so estopped.

4. ELECTION OF REMEDIES.

When one member of a firm of stockbrokers has converted securities of a customer, and has died, such customer may treat his claim for the value thereof either as one against the survivor of the firm, upon an implied contract, or as one in tort against the estate of the partner, by whom the wrong was done; and the bringing of an action against the surviving partner, and obtaining judgment, which is not satisfied, is not such an election of remedies as to preclude an action for the tort against the estate of the deceased partner, but the judgment ascertains the amount of damage done.

5. SAME—WHAT CONSTITUTES.

When securities belonging to his customers have been converted by a stockbroker, by pledging them to other parties, such customers do not, by obtaining from the pledgees such proceeds of the securities as remain after satisfying the pledge, make an election of remedies which debars them from pursuing the wrongdoer for the remainder of their loss.

Appeals, both upon the law and the facts, by Henry R. Pierson, executor of Henry R. Pierson, deceased, and by Thomas F. Mason, as receiver of the Guardian Mutual Life Insurance Company, an individual creditor of the deceased, from so much of the decree of the surrogate, upon the final judicial settlement of the accounts of the said executor, as adjudged that the respondents, creditors of the late firm of Henry R. Pierson & Son, claiming also to be the individual creditors

of the estate of Henry R. Pierson, deceased, were entitled to share in the distribution of the individual estate of the testator, in like manner as the individual creditors who have no claim upon the firm assets. Modified.

Argued before PARKER, P. J., and LANDON, PUTNAM, and MERWIN, JJ.

Hun & Johnston, for appellant executor.

Rosendale & Hessberg, for appellant Mason.

Stedman, Thompson & Andrews, for respondent Edward A. Durant.

Scherer & Downs, for respondent Matthew W. Bender.

Tracey & Cooper, for respondent Charles Tracey.

Isaac Lawson, for respondent Charles Bridge.

William Loucks, for respondent Mary D. Loucks.

Henry A. Peckham, for respondent A. B. Banks.

George B. Wellington, for respondent Mary C. Miller.

Charles J. Buchanan, for respondent Charles P. Cuyler.

Abraham V. De Witt, for respondents Eleanor F. Van Dyke and others.

LANDON, J. It appeared before the surrogate that Henry R. Pierson died January 1, 1890. At the time of his death, and for some years prior thereto, he was the senior member of the firm of Henry R. Pierson & Son, doing business in the city of Albany, as bankers and stockbrokers. The firm was insolvent at the time of his death, and his individual estate was also insolvent. His son, Henry R. Pierson, Jr., was the sole surviving member of the firm, and is the executor of his last will and testament. As the surviving member of the firm, on January 16, 1890, he executed an assignment of all the firm property and assets, and of his individual property, to Robert C. Pruyn, for the benefit of the firm and of his individual creditors. He was also insolvent; made so by his connection with the firm. Mr. Pruyn assumed the trust, and undertook the settlement of the firm estate. The respondents were customers of the firm of Henry R. Pierson & Son, and they presented claims to the assignee. The appellant Thomas F. Mason is the receiver of the Guardian Mutual Life Insurance Company, having been appointed such receiver in place of the senior Pierson, who was appointed as the receiver in 1877. Pierson, as the receiver, misappropriated $24,042.95 of the funds of said company, and between June 17, 1888, and the day of his death, transferred them to the possession and use of his firm. Many other persons presented claims to the assignee. With respect to some of these claims, the assignee was embarrassed in determining whether they were claims against the firm estate, or claims against the individual estate of the deceased Pierson, or both. He therefore, as assignee of the surviving member of the firm and of the junior Pierson, brought an action in the supreme court against Loomis L. White and others, including all the parties to this appeal. The pleadings in that action are not in evidence, but the judgment is, and it was thereby determined, that certain assets in the hands of Loomis L. White & Co. were firm as-

sets, and certain other assets were individual assets of the estate of
the senior Pierson, and certain of these respondents were firm cred-
itors. The issues framed in the action were referred to a referee,
to report the proofs and his findings thereon. Such report being
made, the action was brought to trial at the special term of the
court; and upon the trial the parties entered into a stipulation as
to the facts, and as to the decision and judgment to be entered, and
thereupon decision was made, and judgment entered accordingly.
Loomis L. White & Co., of New York, were the correspondents of the
firm of Pierson & Son. The respondents had been customers of Pier-
son & Son, having contracted with the firm to buy stocks or securi-
ties for them. When the firm received an order from any one of
these respondents to buy any security, it gave an order in its own
name to White & Co. to buy it, and the latter bought it for Pierson
& Son. Pierson & Son kept with White & Co. a margin of about
10 per cent. upon all its purchases and sales of stock and securities
with that company. Pierson & Son had received from each cus-
tomer a much larger margin, either in money or bonds or stocks.
White & Co. reported each purchase to Pierson & Son, and the latter
opened and kept an account with each of the respondents as to the
stock in the same manner as if the firm had it in its own possession;
but, except in the cases of Matthew W. Bender, Jared P. Smith, and
Charles Bridge, in respect to his second claim, so called, Pierson &
Son never had the custody of any of the stock or securities in ques-
tion in this proceeding, except such as their customers furnished as
margin. Pursuant to the stipulation and judgment in Pruyn v.
White, all the respondents were adjudged to be firm creditors, and
each received a dividend of 78½ per cent. upon the amount of his claim,
except Durant, Bender, Charles Bridge (as to his second claim), and
Jared P. Smith. The latter received no dividend, because their
stocks, unlike those of the other respondents, were not in White &
Co.'s hands at the time of Pierson's death, and therefore did not con-
tribute to the firm assets. The respondents participating in such
dividends severally presented to the executor their claims for the
balance in satisfaction of such dividend, claiming that the act of
Pierson & Son in pledging their stocks with White & Co. in an
amount in excess of the sums they respectively owed Pierson & Son
thereon was a conversion by the firm, and by each individual mem-
ber thereof. Durant, Bender, Bridge (as to his second claim), and
Smith presented their respective claims, alleging that the acts of the
firm were a conversion, and therefore a claim against the individual
assets. Mason, as receiver, also presented his claim to the exec-
utor. The executor was silent in respect to any of these claims
until the hearing before the surrogate, but there insisted upon the
same order of preference as did the appellant Mason. They both
claimed before the surrogate, as they now claim upon this appeal,
that the respondents, by force of the stipulation and judgment in the
action of Pruyn v. White, were precluded from participating in the
distribution of the individual assets of the estate, until after Mason
and all the other individual creditors should be paid. They also
claimed that there was no competent evidence before the surrogate

of the fact that any of the respondents who were parties to the action of Pruyn v. White, except Bender and Smith, ever had purchased any stock or securities; that there was no evidence of the fact, except the entries in the books of Pierson & Son, and the memorandum they gave each customer; that, while it was true that each respondent gave his order to Pierson & Son to purchase stock for him, the statements in the books of Pierson & Son to the effect that it had been done were mere hearsay, and in fact not true. Pierson & Son, in fact, did not receive the stock of any respondent, except that of Bender and Smith, and such as its customers pledged with them as margin, but probably expected to furnish any one of them with the stock ordered by him if he should pay for it in full, and demand it. The appellants urge that whoever did not pay for it in full, and demand it, never became entitled to the possession of it, and therefore could not allege that he had lost it through Pierson & Son's conversion. But we think that, inasmuch as Pierson & Son rendered a statement to each customer, and also made entries in their books, such entries being evidence against the firm and each member thereof, and therefore against the executor of the deceased member (In re Saltus, *42 N. Y. 500), stating in effect that they had bought and were holding for him the number of shares of stock ordered by him, giving the name, price, and how the account stood between them and the respondent, the latter, believing such statement and acting upon it, could treat it as true, and thus the executor is estopped from denying it. Moreover, the position taken by the executor upon the hearing before the surrogate was that the firm made the contracts, as alleged, but the executor denied the tort charged.

Pierson & Son, by pledging the stock with White & Co., in an amount greater than their own lien thereon, and thereafter becoming insolvent, so that the customer could not obtain his stock upon payment of the amount of Pierson & Son's lien thereon, thereby converted the stock (Chester v. Dickerson, 54 N. Y. 1, 11); that is to say, the firm was estopped to deny such pledge. The event—that is, Pierson & Son's insolvency—disabled the firm from complying with their contract, and thus completed the conversion. No demand of the money or stock was necessary, as such demand would only be cumulative evidence of the conversion. Ganley v. Bank, 98 N. Y. 484, 494. As between the customer and Pierson & Son, the customer was the owner of the stock; Pierson & Son the pledgee thereof, with a lien for the amount unpaid thereon by the customer. Pierson & Son had no right to so subpledge the stock as to deprive the purchaser of the right to redeem it by paying the balance due upon it. Chapman v. Brooks, 31 N. Y. 75; Lawrence v. Maxwell, 53 N. Y. 23. The firm's pledge of the stock with White & Co., to secure its indebtedness to the latter company, did result in depriving the customer of that right of redemption, and therefore was a conversion. Le Marchant v. Moore, 150 N. Y. 209, 44 N. E. 770; Wilson v. Little, 2 N. Y. 443; Grumann v. Smith, 81 N. Y. 25.

The respondents' claimants may be divided into two classes: First class: Those who, as parties to the action of Pruyn v. White, recovered 78½ per cent. of their claims out of the firm assets therein distributed.

These are Gertrude M. Fraser, William Barnes, Jr., Charles Bridge (as to one of his claims, called herein his "first claim"), Charles Tracey, John F. Rathbone, Dewey Brimmer, A. Bleeker Banks, William Parrot, Frederick P. Gordon, Anna M. Gordon, Charles P. Cuyler, Hiram Miller, and Eleanor F. Van Dyke. They consented to the judgment which converted their stocks and bonds (including such as they had pledged to Pierson & Son as margin, which White & Co. held at Pierson's death) into money, from which, with the proceeds of the sale of the senior Pierson's seat in the stock exchange, after White & Co.'s lien thereon as Pierson & Son's pledgee was satisfied, their dividends were realized, and they also released White & Co. from further liability. Second class: The respondents who, although parties to the action of Pruyn v. White, received no dividend, because White & Co. did not hold their stocks at Pierson's death. These are Edward A. Durant, whose stock was fully paid for as between him and Pierson & Son, but lawfully sold November 17, 1889, by White & Co., as between White & Co. and Pierson & Son, but wrongfully as between Pierson & Son and Durant; Charles Bridge, in respect to his "second claim," so called (as between him and Pierson & Son, his negotiable bonds were fully paid for, and Pierson & Son had the custody of them, but they pledged them as collateral security upon their own notes to the Commercial Bank, which took them without notice of Bridge's title, and the bank, being thus a bona fide pledgee, lawfully applied them on their whole proceeds, in satisfaction of such notes); Matthew W. Bender, whose case is like Bridge's. Durant sued the survivor of the firm for damages, setting forth the facts, but without characterizing them either as a conversion, or as a breach of implied contract, and recovered judgment. Bender also sued the survivor, setting forth the facts, and alleging an indebtedness.

We will first consider the claim of Thomas F. Mason, as receiver of the Guardian Mutual Life Insurance Company. His claim for preference rests upon the stipulation and judgment in Pruyn v. White. All the respondents united with him in the stipulation, as follows:

"Eleventh. That the claim of Thomas F. Mason, as receiver of the Guardian Mutual Life Insurance Company, constituted * * * also an individual obligation on the part of Henry R. Pierson, Sr., now deceased, and is entitled to payment from the executor of Henry R. Pierson, Sr., now deceased, out of the assets of the individual estate of Henry R. Pierson, Sr., now deceased, in preference to the claims which exist against him as a member of the late firm of Henry R. Pierson & Son, arising or contracted in the business of said firm."

The judgment entered in said action contained the like provision. The respondents first above named, who received in Pruyn v. White their dividends out of the firm assets, cannot, with the firm proceeds in their pockets, deny that their claims "exist against him [the senior Pierson] as a member of the late firm of Henry R. Pierson & Son, arising or contracted in the business of said firm." They have been largely paid because their claims so arose and existed. The fact that the senior Pierson converted to his own use the funds of the life insurance company, and afterwards transferred them to his firm, gave his successor, Mason, at least a disputable claim, which he might fairly urge for participation in the firm assets. By entering into the

stipulation with the respondents, he secured, to such of them as participated in such distribution, a greater dividend.

But the case of the respondents who did not participate in such dividend is different. Their respective claims are either firm claims as for breach of the implied contract between them and the firm, or as for the conversion of their property as they may elect. For what signifies the election of remedies, if it may not, while the choice is yet open, be exercised as a shield against total defeat? The claims of the respondents Durant, Bender, and Bridge (as to his second claim) were not in issue in Pruyn v. White, and nothing was therein adjudged as to their character as firm or individual claims, except what may be inferred from the fact that they were excluded from participation in the firm assets, and therefore they could elect to treat them as claims against the estate arising because of the tort of the testator. It is true that Bender brought his separate action against the survivor as upon an indebtedness for a breach of the implied contract with the firm, and the judgment he obtained therein bound the firm assets and the survivor, but not the individual assets of the testator. Morgan v. Skidmore, 3 Abb. N. C. 92. The wrong done in pledging Bender's stock was the active personal wrong of the senior Pierson. By the judgment against the survivor, and the inability to collect upon it, the extent of the damages done to Mr. Bender by the personal wrong of the senior member is ascertained, and thus the extent of the personal claim against him. But it is said that, if he elected to charge that the firm owed him as upon breach of contract, then he waived the tort. Yes; he thereby waived the tort of the firm, but not thereby that of the wrongdoing member. In Morgan v. Skidmore, supra, the damage done the plaintiff by the deceit of one member of an insolvent firm in inducing the plaintiff to enter into a contract with the firm was not merged in the uncollectible judgment against the survivor of the firm upon the contract, but served to show how great that damage was. Here the wrong of one member took from Mr. Bender his property, and left him with a worthless implied contract with the firm. By his action upon it against the survivor, he found out how worthless it was. Why should he not pursue the individual who did him the wrong, or, as he is doing here, pursue his executor? The liability is both firm and individual, and does not cease to be individual, because the firm is first pursued. The election of one remedy against the firm may preclude the other, and so the election of one remedy against the individual may preclude the other. But the election against the individual is here made for the first time, and it is in tort.

The respondents Durant, Bender, and Bridge (as to his second claim) are not obliged to give Mason a preference in the distribution of the assets of the testator. But the stipulation of the first class of respondents gives to Mason a preference over them, but it does not give it to any other creditor. We think the first class of respondents, subject to the preference given to Mason, have a right to participate ratably with all the other creditors in the distribution. By participating in the distribution in Pruyn v. White, the first class of respondents made no election of remedies. As to them, White & Co.

were not wrongdoers, but lawful pledgees. They pursued White & Co. because that firm's liability to Pierson & Son was, as between the two firms, upon contract. White & Co. committed no tort against any respondent. They purchased the stock in the stock market for Pierson & Son upon a margin, and thus the relation of pledgor and pledgee existed between them, without any infirmity in White & Co.'s rights as pledgee. Such securities as the respondents pledged with Pierson & Son as margin, and Pierson & Son again pledged with White & Co., the latter received without notice of the respondents' rights therein. As the respondents had no remedy in tort against White & Co., they could not elect to abandon it. Having secured from White & Co. what that company was obliged to turn over to Pruyn, the assignee, for their benefit, they then could pursue the estate of the testator for the wrong he had done them by so dealing with the stocks they had ordered through his firm, or had deposited with it as margin, as to deprive them of the full benefit of their contract with the firm in regard to them. And in testing their rights in this respect against Pierson & Son, although they were obliged to treat White & Co. as the lawful pledgees of the stock, they could treat Pierson & Son as the wrongful pledgors thereof. And the fact that Pierson & Son never had the custody of the stocks purchased by White & Co. was immaterial, for their representations to the respondents that they had bought them, and were holding them,—representations upon which the respondents relied and acted,—estopped Pierson & Son severally, as well as collectively, from denying the truth of their representations. The action of Pruyn v. White was a friendly one, in which all the parties co-operated, not to condone the tort of Pierson & Son, but to secure what salvage they could from the wreck it had caused to the property of the respondents. The respondents, therefore, could pursue, as they herein elect to pursue, the estate of the senior Pierson for the actual damage which his wrong caused them. That damage is the difference between what they have secured from White & Co. and what they would be entitled to if Pierson & Son or the senior Pierson had done them no wrong. The case of Morgan v. Skidmore, supra, applies.

This result is not affected by the twentieth finding of fact in Pruyn v. White, which is as follows:

"Twentieth. That the business between the firm of Loomis L. White and the Piersons was entirely a business between the firm of Loomis L. White & Co. and the firm of Henry R. Pierson & Son; and there was no business between the firm of Loomis L. White & Co. and Henry R. Pierson, Sr., as an individual."

The several liability of the senior Pierson inhered in the wrong which he did for his firm.

The claims of Jared P. Smith and the first claim of Charles Bridge are withdrawn, because, being contested by the executor and Mason, they were not supported by evidence necessary to establish them. The claim of William Barnes, Jr., must be rejected for the same reason. The silence of the executor as to it after its presentation to him, until the hearing before the surrogate, did not preclude the executor from contesting it there. In re Callahan's Estate, 152 N. Y. 320, 46 N. E. 486. He contested Barnes' right to participate in the

distribution of the testator's asscts, except as a firm creditor, after all the individual debts should be paid. This right as firm creditors, if desired, should be reserved also to Jared P. Smith and to Charles Bridge as to his first claim.

Several other questions are presented upon this appeal which we do not think it necessary to discuss. Our purpose has been to see whether substantial justice has been done. Whether any evidence was improperly received is of no consequence, since from that which was competent all the material facts in the case are clearly perceived. Code, § 2545. We think it was within the discretion of the surrogate to open the proceedings, and admit claimants to a hearing who had not presented their claims, until after the surrogate had announced the principle of his decision. If that principle was right, justice required that those claims which came within it should be admitted, upon equitable terms.

The claims of Jared P. Smith, William Barnes, Jr., and the first claim of Charles Bridge should be excluded from participation in the distribution as individual creditors; that is, the decree in these respects is reversed. The claim of Thomas F. Mason should be preferred in the distribution over the claims of the "first class" of respondents, herein so called. Of course, to the extent that this preference increases Mason's dividend, it decreases that of the first class of respondents, but not that of the second class or of the other individual creditors. Each of the two appellants should have costs, also one bill of costs to the second class of respondents, to be out of the fund.

Ordered accordingly. The decree to be settled by Justice LANDON. All concur.

| | |
|---|---|
| Say fund | $30,000 |
| Mason's claim | 30,000 |
| First class of respondents | 30,000 |
| Second class and all others | 30,000 |
| | $90,000 |

Second class of respondents and others get one-third. Mason gets the rest.