(74 Misc. Rep. 222.)

## KAVANAUGH v. McINTYRE et al.

(Supreme Court, Trial Term, New York County.   November, 1911.)

1. BANKRUPTCY (§ 392*)—DISCHARGE—MALICIOUS "INJURY TO PROPERTY."
     Federal Bankruptcy Act July 1, 1898, c. 541, § 9, 30 Stat. 549 (U. S. Comp. St. 1901, p. 3425), provides that a bankrupt shall not be exempt from arrest upon civil process upon a claim from which his discharge would not be a release, and section 17, subd. 2, provides that a discharge in bankruptcy shall not release him from liability for "willful and malicious injuries to the person or property of another."  *Held*, that the intentional conversion and sale of a client's corporate stock by a broker constituted an "injury to property" within section 17, so that the broker's discharge in bankruptcy would not release him from liability for such conversion, and hence he was not exempted from arrest; the term "injury to property" including any legal taking and detention thereof from the owner.
     [Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 392.*
     For other definitions, see Words and Phrases, vol. 4, pp. 3619-3621.]

2. APPEAL AND ERROR (§ 1195*)—LAW OF CASE—DECISION ON APPEAL.
     A decision of the Appellate Division on appeal is conclusive on the Trial Term on remand.
     [Ed. Note.—For other cases, see Appeal and Error, Dec. Dig. § 1195.*]

3. PARTNERSHIP (§ 153*)—LIABILITY OF FIRM—ACTS OF PARTNER—TORTS.
     All of the copartners of a brokerage firm are liable for the conversion of a client's stock by a partner, where the proceeds went to the firm's gain and were used for its benefit.
     [Ed. Note.—For other cases, see Partnership, Cent. Dig. §§ 274-277; Dec. Dig. § 153.*]

4. TROVER AND CONVERSION (§ 49*)—MEASURE OF DAMAGES—CONVERSION OF STOCK.
     One whose corporate stock was intentionally converted and sold by brokers having possession thereof may recover on the highest market price of the stock down to the time of trial, especially in view of the fact that, when the price was the highest, the action was making reasonable progress.
     [Ed. Note.—For other cases, see Trover and Conversion, Cent. Dig. § 264; Dec. Dig. § 49.*]

5. TROVER AND CONVERSION (§ 53*)—DAMAGES—INTEREST.
     The damages awarded for the intentional conversion of corporate stock should not include interest.
     [Ed. Note.—For other cases, see Trover and Conversion, Cent. Dig. § 254; Dec. Dig. § 53.*]

Action by F. W. Kavanaugh against T. A. McIntyre and others. Judgment for plaintiff.

See, also, 128 App. Div. 722, 112 N. Y. Supp. 987.

Myer Nussbaum, for plaintiff.

Patton & Patton, for defendants John G. McIntyre and Thomas A. McIntyre, Jr.

John J. O'Connell, for defendant Edward T. White.

J. A. KELLOGG, J.   The answering defendants, together with Thomas A. McIntyre, now deceased, and one Ryan, named as a defendant in this action, but not served, constituted, in the early months

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

of the year 1908, a brokerage firm engaged in business as such in the city of New York under the name of T. A. McIntyre & Co. One George W. Kavanaugh, a brother of the plaintiff, had, at some time prior to the transactions hereinafter detailed, a cotton account and also a stock account with another brokerage firm known as A. O. Brown & Co. Being indebted to his brother, the plaintiff, he transferred to him his interest in this stock account with A. O. Brown & Co. On the 5th day of February, 1908, the plaintiff was indebted to A. O. Brown & Co. upon this stock account to the amount of $3,-853.32, and they held as security therefor stocks in various corporations listed upon the New York Stock Exchange of the value of approximately $25,000, being more than six times the amount of the indebtedness. On that day by direction of the plaintiff the firm of T. A. McIntyre & Co. took over this account, received the certificates of stock, and paid the amount due Brown & Co., thus succeeding to their interests. They also, apparently through a misunderstanding, took over the cotton account, which was shortly afterward closed out at a small profit, which is still due to the plaintiff or his brother, but which does not in any way affect the questions here to be considered.

Almost immediately thereafter, and commencing on the very next day, this firm, without any notice to the plaintiff or demand of any kind upon him, disposed of these various securities, placing the avails thereof in their own bank account. The various stocks had all been disposed of prior to the 18th of March, 1908, and three-fourths in value thereof had been disposed of on or prior to February 14th, or within nine days after the acquisition of the possession thereof by defendants' firm.

On April 23d of that year the copartnership filed a petition in bankruptcy, and during the pendency of this action the answering defendants obtained their discharge in bankruptcy, which fact was thereafter pleaded herein as a defense. At the commencement of this action in May, 1908, an order of arrest was granted. A motion to vacate this order was denied, and from the order of denial an appeal was taken to the Appellate Division of this department, which unanimously affirmed the order appealed from. The opinion of the court delivered by Mr. Justice Cochrane, reported in 128 App. Div. 722, 729, 112 N. Y. Supp. 987, 992, renders unnecessary any elaborate consideration of the principles of law here involved.

[1] The defendants claimed to be exempt from arrest. Section 9 of the federal bankruptcy law provides that a bankrupt shall not be exempt from arrest upon civil process upon a claim from which his discharge in bankruptcy would not be a release, and in section 17, in its second subdivision, provides that a discharge in bankruptcy shall not release a bankrupt from liability "for willful and malicious injuries to the person or property of another."

[2] The decision of the Appellate Division was to the effect that an order of arrest was properly issued in this case, and is therefore conclusive upon this court as a holding that a liability for a conversion which is willful and malicious is not released upon discharge in bankruptcy. The learned opinion of Mr. Justice Cochrane holds that

the term "malicious," as used in the statute, includes any wrongful act done intentionally without just cause or excuse, a conclusion at which he arrives after a very elaborate and careful examination of the decisions of the courts and the works of the legal lexicographers. The allegations of the complaint and the affidavit used on that motion, as stated by the learned justice, were to the effect:

"That almost immediately after the defendants came into possession of this property they began to sell it to different parties, and continued to make such sales from time to time without plaintiff's knowledge after they had realized more than sufficient to pay the amount due them from plaintiff, and applied the avails to their purposes."

These facts set forth in the affidavits upon which the order of arrest was sustained by the Appellate Division were amply proven upon the trial before this court.

The learned counsel for the defendants urge that the decision in this case in this department has since been disregarded by the Appellate Division in the First Department in Maxwell v. Martin, 130 App. Div. 80, 114 N. Y. Supp. 349, and that the United States District Court in the Southern District of New York has expressly refused to follow the decision in the case of In re Ennis & Stoppani (D. C. N. Y.) 22 Am. Bankr. Rep. 679, 171 Fed. 755. The decision in the Appellate Division is, of course, authority here, and would be followed in any event. An examination of the decision in Maxwell v. Martin shows that it was based upon the authority of decisions made before the amendment to the act in 1903, upon which amendment the decision of our own Appellate Division was in a measure founded, and an examination of the case of In re Ennis & Stoppani shows the decision of Judge Hand is based upon a narrow construction which holds that a "conversion" is not an "injury to property." He states:

"Injury to person and property means causing damage to the subject-matter of the rights, not depriving the owner of them."

This narrow construction of the term "injury to property" is not in harmony with the accepted definition. Bouvier expressly defines as follows:

"Injuries to personal property are the *unlawful taking and detention thereof from the owner;* and other injuries are some damage affecting the same while in the claimant's possession or that of a third person, or injuries to his reversionary interest." See Bouvier's Law Dictionary (Rawle's Revision) vol. 1, p. 1044.

To hold that a person is not injured in his property where some portion of it is actually taken away from him, but only when it is all left in his possession reduced in value, does not give effect to the accepted meaning of the phrase in legal parlance.

The definition of the Code of Civil Procedure (section 3343, subd. 10) is:

"An 'injury to property' is an actionable act whereby the estate of another is lessened, other than a personal injury, or the breach of a contract."

Although expressly applicable only to that particular statute, this interpretation of the meaning of the term is in full accordance

with the generally accepted understanding. The narrow construction contended for, which would permit the perpetration of such a barefaced wrong as in the case at bar without any civil liability surviving a discharge in bankruptcy, would be highly improper and should not be struggled for, if any other interpretation of the statute is in any view permissible. Mr. Justice Peckham, in writing the opinion of the Supreme Court of the United States in Tinker v. Colwell, 193 U. S. 473, 488, 24 Sup. Ct. 505, 509 (48 L. Ed. 754), 11 Am. Bankr. Rep. 568, in discussing the meaning of the term "malice," as used in this very section under consideration, wrote:

"We are not inclined to place such a narrow construction upon the language of the exception. We do not think the language used was intended to limit the exception in any such way. *It was an honest debtor and not a malicious wrongdoer that was to be discharged.*"

The conversion of the stocks of the plaintiff by the defendants' firm was in no sense the mistake of an "honest" debtor; it was, *most decidedly,* the act of a "malicious wrongdoer."

[3] It is urged in behalf of the answering defendants that they knew nothing about the transaction; that it was consummated by some other member of the firm. The proceeds, however, of the conversion went into the firm's bank accounts and were used for its benefit, and all of the copartners therefore are liable for the act. Chester v. Dickerson, 54 N. Y. 1, 13 Am. Rep. 550; Griswold v. Haven, 25 N. Y. 595, 82 Am. Dec. 380; Matter of Pierson, 19 App. Div. 478, 46 N. Y. Supp. 557; Bradner v. Strang, 89 N. Y. 299, affirmed 114 U. S. 555, 5 Sup. Ct. 1038, 29 L. Ed. 248; Castle v. Bullard, 64 U. S. 172, 16 L. Ed. 424; Levy v. Abramsohn, 39 Misc. Rep. 781, 81 N. Y. Supp. 344; Coman v. Reese, 21 How. Prac. 114; Sherman v. Smith, 42 How. Prac. 198. In Castle v. Bullard, Justice Clifford laid down the principle as follows:

"Thus, for example, if one of the partners should commit a fraud in the course of the partnership business, all the partners may be liable therefor, although they may not all have concurred in the act. So, if one of the firm of commission merchants should sell goods consigned to the firm, fraudulently, or should sell goods so consigned in violation of instruction, all the partners would be liable—citing Story on Part. § 166; Collier on Part. (Am. Ed. 1848) §§ 455, 457; Nicoll v. Glennie, 1 Maule & S. 588."

However vigorously certain of the defendants may deny knowledge of the transaction, the act was performed by some member of the firm for the common benefit of all, and undoubtedly sustained for a time the credit of the firm and postponed for all the partners the evil day of admitted insolvency with the resultant opportunity for recoupment of losses, which unfortunately proved unavailing. All of the members of the copartnership are therefore civilly liable. There is no evidence which indicates, in the slightest degree, that any excusable mistake was made by the defendants in appropriating the securities belonging to the plaintiff. It was a deliberate and intentional act. Action was shortly brought thereafter and was prosecuted, at least for a time, with reasonable expedition.

[4] The plaintiff is therefore entitled to recover the highest prices

reached by his respective stocks down to the time of the trial; especially in view of the fact that such highest prices were in all cases reached during the months of December, 1908, to February, 1909, inclusive. Up to that time certainly the action was progressed with reasonable celerity, and the rule as stated applies. Romaine v. Van Allen, 26 N. Y. 309; Markham v. Jaudon, 41 N. Y. 235.

From such prices, however, there should be deducted the amount due from the plaintiff upon the stocks of $3,853.32. From a statement of prices which has been submitted by agreement of all parties, the following computation is made:

| | | | |
|---|---|---|---|
| 100 | Missouri, Kansas and Texas | 44⅞ | $ 4,487 50 |
| 100 | Missouri Pacific | 73⅜ | 7,337 50 |
| 2½ | Missouri Pacific | 73⅜ | 183 44 |
| 200 | Cast Iron Pipe | 30⅞ | 6,175 00 |
| 100 | Erie 1st preferred | 51½ | 5,150 00 |
| 200 | Missouri, Kansas and Texas preferred | 75½ | 15,100 00 |
| 1 | Erie scrip | 0· | 0 00 |

| | |
|---|---|
| Total | $38,433 44 |
| Deduct amount due | 3,853 32 |
| Balance | $34,580 12 |

The allegation of damage in the complaint is limited to the amount of $30,000.

[5] The plaintiff is not entitled to interest under the rule of damages above indicated, and no application has been made to amend the complaint by increasing the amount stated in the allegation of damage.

Judgment for the amount of $30,000 only should be entered, and for that amount is directed to be entered, with costs.