By the Court.—Rapallo, J.
On the argument this case was assimilated to that of a debt contracted by a party on his own individual behalf, by means of fraudulent representations made by him as to his own solvency.
It is claimed that in such a case, the creditor has a right to sue in tort to recover damages for the fraud, or on contract to recover the debt; that he may pursue either of these remedies, but not both ; and that a judgment in either form of action is a bar to the other; that all claims and causes of action, arising out of the transaction, are merged in such a judgment.
Such would undoubtedly be the result, where various contract obligations were given by the same individual for the same debt, provided they were all his own individual and several obligations. They would necessarily all merge in the higher security of a judgment recovered on either one of them. And it may well be, that the same principle would apply in a case of fraud, where the party liable for the fraud, was the sole party responsible on the contract induced by the fraud; and that, in such a case, all liability for. the fraud would be merged in a judgment on the contract.
But the present case is clearly to be distinguished *103 from one where the judgment set up as a bar is founded upon the several contract of the defendant in the action for the fraud, and is against him alone; and by considering this distinction, much confusion will be avoided.
A member of a copartnership consisting of several persons may create a valid, several and individual liability on his own part for a debt due by the firm ; and the joint liability of the firm and the several liability of the individual partner may both be enforced. A creditor holding the obligation of the firm, and having the additional security of the several and individual liability of oné of the copartners, is entitled at law and in equity to all the benefits which attach to each. He is not bound to elect between them, and neither merges in the other. One member of a firm may guarantee a debt due by the firm; he may indorse its paper, or may give his individual undertaking as collateral to that of the firm. Such an individual security may be of great value to the creditor. One member of a firm may be abundantly responsible for all his individual obligations, and yet the firm may be involved to an extent far beyond the means of the partner individually solvent. In case of his death, the creditor holding his individual guarantee will be secure, while without it, he would be obliged to come in pro rata with all the creditors of the firm.
There can be no merger in such a case, of the individual liability of the single partner in the obligation of the firm or in a judgment upon it against the survivors. As to the individual partner his several obligation is a higher security than his joint liability with his copartners.
Yet it is evident that no such results would follow when both obligations were incurred by the same person in severalty. A man can guarantee a debt due from himself and others jointly, but a guarantee of his own *104 separate debt would be an anomaly; and it is clear there could be but one recovery against him for the same debt, however various the forms of security his creditors might hold.
These being the rules applicable to cases where all the obligations rest in contract, is there any distinction in principle when the obligation of the individual partner arises out of his fraudulent representation as to the solvency of the firm, whereby the creditor has been induced to trust it ?
The liability of the partner making the representations in such a case, is in extent similar to that of one who guarantees the solvency of the firm. He is bound to make good his representations, by paying the damages resulting from the insolvency of the firm. The only difference is that in one case, he, by express contract, assumes this liability, and in the other, the law casts it upon him. Indeed, this position is conceded by the appellant in his points, where it is claimed that the party making the misrepresentations is in effect treated as a guarantor of the debt.
Such being the responsibilities of a partner making representations as to the solvency of his firm, a party asked to give it credit may well rely, in doing so, upon such representations.
Although the party giving the information is interested in giving the credit, yet he is in a position to know the facts, and is individually of abundant pecuniary ability to respond for any deceit.
This individual responsibility is the inducement, to the creditor to part with his property, and no injustice is done to the partner making the representations, or to his estate, by making him or it responsible in the same manner as though he had guaranteed the debt, if the representations were intentionally false.
The referee has found the fraud charged; and although it is established by the evidence of a single *105 •witness as to a conversation with, the deceased, after Ms lips were sealed by death, so that Ms version of the transaction can never be known, yet the evidence is sufficient to place it beyond the power of this court to disturb his finding, and it must be regarded as conclusive for the purposes of this action.
Upon the facts thus found, a clear individual responsibility of Randolph to the plaintiffs, for any loss they might sustain by dealing with the firm of Good-ridge & Co., was established.
In addition to this individual liability, the plaintiffs hold the obligation of the firm, by virtue of its contract.
It is urged that the fraud of Randolph imposed no liability upon him, beyond that of being arrested in an action against the firm founded on the contract.
This position is not maintainable. To his liability jointly with the other members of the firm upon the contract, it superadded a more onerous one, viz : an individual several liability to answer for his misrepresentations, or to make them good ; and it is conceded that an action might have been maintained against Randolph individually, or his separate estate, upon that liability, but for the judgment against Goodridge as survivor.
It is not disputed that the present action would be maintainable, were it not for that judgment.
But it is urged as a further ground of defense, that the plaintiffs were bound to elect between the tort and the contract, and that, by suing on the contract, they waived the tort.
If the claim for damages for the deceit is inconsistent with an affirmance of the contract, then obtaining the judgment against the firm or the survivor, upon its contract, would necssarily operate as an election, and a waiver of the damages for the deceit; and the converse would likewise be true (Morris v. Rexford, 18 N. Y. 552, and cases there cited).
*106 When by reason of fraud of one of the parties .to a contract, the other party has the right to rescind or treat it as void,' and to reclaim what he has parted with, as having been obtained from him tortiously, it is well settled that by electing to take that course, he precludes himself from availing himself, in any manner, of the contract; and that to entitle him thus to rescind or avoid the contract, he must restore all that he has received under it. And upon the same principle, if, after the discovery of the fraud, he elects to affirm the contract, he loses the right to reclaim his property (Lloyd v. Brewster, 4 Paige, 537).
Any different rule would be subject to the manifest inconsistency of regarding the same contract as both valid and void.
But it is equally well settled that a party who has been induced by fraud to enter into a contract, is not obliged to rescind or avoid it, in order to obtain redress.
He may affirm the contract and retain all benefits to be derived under it, and also claim the damages resulting from the fraud (Allaire v. Whitney, 1 Hill, 484; Whitney v. Allaire, 1 N. Y. [1 Comst.] 305; 4 Den. 554).
The difference is that in case of a rescission he would be entitled to recover all that he had paid or parted with; in the other case, his recovery would be restricted to such damages as he could prove. In the present case, the fraud consisted in inducing the plaintiffs, by false representations as to the solvency of the firm of Goodridge & Co., to part with a large amount of property, on the credit of that firm. For the property thus parted with, the plaintiffs received nothing but the obligation of the firm. They clearly had a right of action against Randolph individually, for any loss they might sustain by that transaction, and in case of a marshalling of his individual assets in equity, a judg *107 ment recovered on that claim would be his individual debt, and entitled to, preference over the partnership debts.
The question now presented is whether, in order to keep this individual claim against Randolph or his estate in force, it was necessary that the plaintiffs should have abandoned what they received under the contract, viz : the liability of the firm or its assets, so far as they would go, towards the payment of the debt. If it was not necessary that they should abandon the claim against the firm, then their enforcing it by judgment and execution against the survivor and the partnership assets in his hands, was no waiver of the individual liability of Randolph, founded on his personal fraud, for the loss of the plaintiffs, arising from the insufficiency of their assets.
The only consequence of those proceedings was that the claim of the plaintiffs against Randolph’s estate would be limited to such deficiency. Under the general principles of the decisions above referred to, it could not be contended that if, in part payment or as security for the price of the bill of exchange sold, the plaintiffs had received, in addition to the obligation of the firm, property or obligations of third parties, their resort to that property, or the enforcement by judgment and execution of such obligations of third parties, would have deprived them of their remedy against Randolph individually, for any loss or damages resulting from the deceit. And it has not, in ffact, been claimed in express terms, that to entitle them to their remedy against Randolph personally, the plaintiffs were bound to rescind the contract with the firm. If such recission were not necessary, it would seem to follow as an unavoidable result that both the contract of the firm and the separate individual liability of Randolph for damages could be enforced.
But the appellants contend that Randolph being a> *108 member o£ the firm to which the credit was given, that circumstance takes the case out of the rules which would be applicable, and that inasmuch as the firm could not be sued without suing Bandolph, a judgment against him as a copartner would be a bar to a subsequent action against him as an individual to recover compensation for the same property ; and further, that it would be inequitable to allow the plaintiffs to obtain a preference over individual creditors in the distribution of the partnership assets, on the ground that they were creditors of the partnership, and afterwards to obtain a preference over partnership creditors in the distribution of the individual estate of the deceased partner, on the ground that they were his individual creditors.
The first of these propositions has already been incidentally considered, and partially answered, by showing that in case of a copartnership, an individual liability of one of the members of the firm would not necessarily be merged in a judgment against the firm, embracing the same debt for which the partner was individually liable. But in the present case we are relieved of- the supposed technical difficulty of this position, by the circumstance that Bandolph was not living when the judgment against the firm, or rather against Goodridge, the surviving partner, was recovered.
The judgment was against Goodridge alone, and at law bound only the partnership assets, and the individual property of Goodridge.
The plaintiffs being entitled to retain all the security received under the contract, they clearly had a right to enforce their claim upon the partnership assets and Goodridge, without impairing the individual liability of Bandolph. There was no judgment against Bandolph or his individual estate. To what extent the judgment against the surviving partner should be enforced against the individual estate of *109 Randolph, could only be determined in an action in equity.
Had Randolph been living, and had the judgment been rendered against him personally together with his copartner, this case would probably not have arisen.
There would have been no occasion for any separate action against Randolph, unless his assets had, by proceedings in bankruptcy or otherwise, become placed in a position to be marshaled. It might have been necessary in that event, to determine- by an action at law, whether he had incurred an individual liability to the plaintiffs.
But as long as he lived and had control of his own estate, the judgment against the firm could have been enforced against his individual property in the same manner as his individual debts. It would have been in fact a judgment against him individually as well as in his character as copartner. And in the action in which such judgment was recovered, the plaintiffs could have had the same remedies against his person which they might have had in an action founded exclusively on the fraud. There would have been no necessity, therefore, for such an action as this to make available all the rights of the plaintiffs against the individual partner as well as the firm. Still, inasmuch as Randolph would have been, if living, a necessary party to an action on the contract against the firm, it is difficult to say that the legal effect of recovering a judgment against him in such an action would be to bar a subsequent action at law for the fraud, without coming in conflict with the acknowledged right of the plaintiffs to both the benefit of the contract and redress for the fraud. The cases of Wanzer v. De Baun (1 E. D. Smith, 261), and Corn Exchange Ins. Co. v. Babcock (8 Abb. Pr. N. S. 257), support the proposition that such a judgment would be no bar.
It, is not necessary, however, to the decision of this *110 case, to pass definitely upon the question as to the form in which the individual liability would be enforced in such a case. There has been no recovery against Randolph or his individual estate except the one now under review.
The judgment against the survivor of the firm estabtablishes no claim at law upon the estate of the deceased partner, and certainly no individual claim.
It is not the case of two judgments against the same party for the same debt or obligation. One judgment is against the survivor, and binds only him and the assets of the firm ; and to this the plaintiffs were entitled by virtue of their contract. The other is against the estate of the deceased partner to enforce his individual obligation or liability to make good to the plaintiffs what they have failed to collect under the first judgment.
Unless this action is to be maintained, the plaintiffs have no means of enforcing the individual liability which Randolph incurred to them by his representations; That such liability was incurred is indisputable. That to keep it in force the plaintiffs were not bound to rescind the contract or release the firm assets, is equally clear. How, then, can proceeding against those assets in any manner affect the collateral individual liability of Randolph ?
It has been suggested that in case the judgment in the present action should be collected out of the separate estate of Randolph, that estate might still be liable on the judgment against the survivor of the firm.
There is no difficulty on that point. The judgment against the survivor could only be enforced against Randolph’s estate through the intervention of a court of equity, and it' is not presumable that such a court would award double satisfaction to the plaintiffs for their property.
The second ground of objection to this recovery remains to be considered, viz.: that it gives the plain *111 tiffs a double preference. This is not an unusual result, nor is such a preference in conflict with any principle of equity. When a partner by his own act makes himself individually liable for a debt of his firm, whether "by express contract or otherwise, the creditor is entitled to the full benefit of that obligation, in addition to the obligation of the firm.
A creditor holding the joint obligation of a firm and also the separate obligation of one of the copartners as surety for the same debt, is entitled to payment out of the partnership assets in preference to the individual creditors of the partners ; and if he fails to obtain payment out of those assets, he is entitled to preference over the other partnership creditors in the distribution of the separate estate of the individual partner (Wilder v. Keeler, 3 Paige, 167, 176).
Such are the rules of marshaling assets in .equity where the separate obligation of the individual partner rests in contract, and therefore it is not a just ground of objection to compensation for a wrong, that it would result in a similar distribution. If it is equitable where the deceased partner has agreed to assume the individual obligation, it is equally equitable where the law compels him to assume it, as a just compensation due to the party whom he has misled.
It is probable that the parties most interested in the fund in dispute are creditors. But their equity cannot be considered independently of those of the deceased partner (Price v. Barnard, 20 Vt. 479; Exp. Ruffin, 6 Ves. 119; Hoxie v. Carr, 1 Sumner, 173; Sage v. Chollar, 21 Barb. 596; Morris v. Morris, 4 Grattan, 293; Bell v. Newman, 5 Serg. & R. 78; Waterman v. Hunt, 2 R. I. 298 ; Glen v. Gill, 2 Md. 16 ; 1 Barb. Ch. 480 ; Story Eq. § 1253).
There is a further difficulty in this case, arising out of the want of proper findings. There is no finding of the referee in relation to the judgment on the contract; and no point seems to have been made on the trial, as *112 to the effect of that judgment. There is an allegation, in the complaint that the plaintiffs have exhausted their remedy at law by judgment and execution against the survivor of the firm, but this allegation is denied by the-answer. There is parol evidence, in the case, of such a judgment, but although findings can be intended for the purpose of supporting a judgment, they cannot be-supplied for the purpose of reversing.
The great difficulty is that there was no decision of the referee upon this point now raised. He was not called upon to decide, and has not decided anything in-respect to the effect of the judgment; and, although there is an exception to his not having decided that it was a bar to this action, it does not appear that he was ever requested so to decide, or that any such point was made upon the trial.
Upon this ground, as well as upon the merits, the judgment should be affirmed, except as to costs.
The 317th section of the Code does not allow costs against executors and administrators, where they are-exempted therefrom by the Revised Statutes.
This provision is not confined to costs to be paid by the executors personally, but is general. This being an action at law, the referee had no power to award costs.
If the plaintiffs deemed themselves entitled to costs, they should have made a special" application .to the court, and shown the facts giving them the right to. costs.
So much of the judgment as awards costs to the plaintiffs should be reversed,* and as to the residue, the judgment should be affirmed without costs to either party on this appeal.
Judgment affirmed except as to costs : and reversed at to costs, without costs in this court to either party.*

In Bailey v. Bergen, 5 Hun, 555, the award of costs was stricken out without prejudice to an application in the manner allowed by law