By the Court.—O’Gorman, J.
This is an action to recover $500 as damages, being the price of twenty shares of the stock of a corporation called the “Double Weaving & Cutting Company,” sold by defendant to the plaintiff.
This sale, the plaintiff claims to have been effected by means of false and fraudulent representations of defendant as to the value of said stock, which was at the time of the purchase, and at all times since then, wholly worthless. The price paid by the plaintiff was $25 for each share. The par value was $100 a share. The sale was made and the money paid on September 14, 1881.
The plaintiff’s evidence as to the making by the defendant of the representations as charged in the complaint, was contradicted by the defendant. Enough of testimony, however, was given on behalf of the plaintiff, if the jury believed it, to sustain his contention on that subject.
The learned trial judge charged the jury, at the request of appellant’s counsel, that the measure of damages was the difference between the price that plaintiff paid for the stock, and its actual value at or about the time when he *19 ascertained that the representations were untrue ; and the jury gave damages for the full amount paid for the stock and interest, finding in effect that the stock was worthless. The evidence introduced by the plaintiff on that subject, was the record of a judgment obtained on July 18, 1883, in favor of the defendant in this action against the said company, for $794.42. On this judgment, execution was issued against the property of the corporation, and returned unsatisfied, followed by a decree of sequestration upon the property of the corporation, and the appointment of a receiver on August 10, 1883. The learned trial judge held that the worthlessness of the stock was proved by this decree, and refused to admit as evidence of value the opinions of witnesses on the subject. These rulings in themselves are correct. The decree of sequestration of the property of a corporation, under sections 1784 and 1793 of the Code, depended on record evidence of its complete inability to pay its debts, and in effect closed the career of the corporation, and its corporate life then came to an end (Eddy v. Co-operative, &c. Association, 3 Civ. Proc. 442).
Another question still remains to be considered, which was raised, although somewhat vaguely, by one of the defendant’s requests to charge. Assuming that the stock was worthless, as claimed by the plaintiff, what sufficient evidence is there that it would have had any value if the facts were as represented by the defendant, or that the non-existence of these facts in any degree, caused the stock to be worthless ? In other words, what evidence is there that plaintiff suffered any damage as the natural and legitimate consequence of the representations made by the defendant ? .
To maintain an action for obtaining money on fraudulent representations, it must be proved by the plaintiff that the person charged made the representations ; that they were false to his knowledge when made ; that the representations related to some substantial circumstance going to the inducement or essence of the bargain—mate *20 rial to the subject of the negotiation, and constituting the very basis of the contract. The representation must relate to facts, not to opinions, and to facts bearing on the subject of the contract, not do those merely collateral and incidental thereto, and the representation must have had a vital bearing and influence on the mind of the party, in inducing him to enter into the contract (Arthur v. Griswold, 55 N. Y. 400 ; Smith v. Countryman, 30 Id. 655).
The plaintiff here does not seek to rescind the contract of sale, nor does he offer to return the shares of stock purchased by him from the defendant. He affirms the contract, and claims to recover the damages resulting from the alleged fraud. In such a case, the recovery is restricted to such damages as he can prove (Morgan v. Skidmore, 3 Abb. N. C. 92). This proof, in my opinion, the plaintiff in the case at bar failed to supply. He was a machinist, and, before purchasing the stock in question, he made a personal examination of the cutting machine, for which the “Double Weaving & Cutting Company ” owned patents, and he was satisfied with its performance. He received from the' defendant a printed prospectus of the company, setting forth that it owned only these patents, and the cutting-machine tools, &c., at their place of business in South Fifth avenue. In the prospectus, reference was made-to a loom, which, it was there stated, did not belong to the company, but could be purchased from the manufacturer in Rhode Island, and would cost but little more than the ordinary loom.
One of the representations alleged to have been made by the defendant, inducing plaintiff to purchase the stock, was this : That the company had orders for five hundred looms at $150 each. The evidence to sustain this charge is insufficient. ■ But if this representation was true, it was immaterial, because7the company did not manufacture these looms, and did not hold out any prospect of any profit from the manufacture of these looms by others, and *21 it is not alleged that defendant represented' that any such profit could accrue to the company therefrom.
The plaintiff testified that he understood the property owned by the company was the patent-right of the invention for cutting goods, and that the plan of the company was to dispose of royalties, sell shop-rights and machines, and that it had no other source of profits. If this representation was made, it could not have been the inducing cause of the plaintiff’s purchase of stock in the company, and there is no evidence that the stock would have been more valuable, if the representation was true, or less valuable because it was false.
The next representations alleged to have been made by defendant, and to be false, were that five cutting machines, at 85,000 each, had been ordered by certain firms named by the defendant, and that a member of one of these firms was a large stockholder in the company.
Assuming that these representations were made as alleged, and were untrue, there is no evidence that, by reason of their falsity, the value of the stock was injuriously affected. They were not material to the substance of the contract, but related to facts only collateral and incidental to it.
The burden of proving damage was on the plaintiff, and he failed to supply such proof. - It was not enough to leave the question to be determined without evidence, and only by the conjecture or surmise of the jury.
The judgment should be reversed, and a new trial ordered, with costs to abide the event.
Sedgwick, Ch. J., concurred.