employment, it would be demanded and accepted the same as any other usual condition. The more ignorant and the more unskilled the laborer, and therefore the more needing protection from accidents, the more readily would he yield easy submission to such an exaction. The heedless and improvident would sign without consideration of the significance of the contract, just as plaintiff claims he did in this case, and the reckless and foolhardy would trust to the future to protect him from the dangers which he assumed. In my opinion, too, the idea of an increased compensation going with the increased risk would prove illusory, and wages would be fixed without reference to the release.

Neither am I able to accept the idea that the question is one of mere individual interest. If the principle be adopted in general terms that such releases are valid, we may assume that its effect upon contracts of employment will likewise be general. At least, it may not safely be assumed that the practice of taking such contracts, if held valid, will not be general. We must decide the question presented to us upon the theory that we are not adjudicating for this particular plaintiff and defendant, but for all who may desire to take advantage of the principle which shall finally be established upon this question, and that the effect of sustaining the present release will be to say to employers as a class that, if they see fit so to do, they may procure from their employés contracts which will absolve the former from all obligations to reasonable care and prudence, and subject the latter to all the risks and dangers which will flow from indifference and carelessness. Such a policy, if adopted, and resulting in increased dangers and injuries to the lives and health of a great class of citizens, could not but be the cause of widespread harm and a matter of general concern. It is doubtless true that many employers would not exact such a contract, and that many more, even if the same were taken, would not lessen the degree of their care for the safety of their employés. But in considering this question upon the grounds suggested, we must fairly look, not upon the narrowest limitations which might be placed upon the effects of a decision holding such a release valid, but rather upon the possibilities for harm therefrom to the public. These considerations and views thus expressed seem to justify and lead to the conclusion that the release secured by the defendant should be held void as opposed to public policy, and that plaintiff's judgment should be affirmed.

Judgment and order affirmed, with costs. All concur, except STOVER, J., who dissents upon the ground that the release executed by plaintiff was valid.

(98 App. Div. 155)

## In re ROBERTS.

(Supreme Court, Appellate Division, First Department. November 25, 1904.)

1. JUDGMENTS—SCOPE OF ADJUDICATION—CONCLUSIVENESS AGAINST ASSIGNEE.

　　In an action for services, during the pendency of which defendant makes a general assignment for creditors, a judgment for plaintiff is conclusive on the assignee, in the absence of fraud or collusion, as to the amount and validity of the claim for services, although the assignee is not made a party to the action, but is not conclusive as to the right of plaintiff to a preference on account of the services, where the nature

of the services is not definitely stated in the complaint, but it may be shown aliunde, whether the services were such as to entitle plaintiff to a preference or not.

Appeal from Trial Term, Erie County.

In the matter of the final accounting of Julia E. Roberts, as assignee of the Charlotte Steel & Iron Company, under a general assignment for the benefit of creditors. From an order settling the accounts of the assignee, and directing the distribution of money in her hands, Michael J. Galvin, a claimant of a preference, appeals. Reversed.

Argued before VAN BRUNT, P. J., and HATCH, PATTERSON, O'BRIEN, and LAUGHLIN, JJ.

J. H. Metcalf, for appellant.
Eugene Van Voorhis, for respondent.

LAUGHLIN, J. The assignee for the benefit of creditors of the Charlotte Steel & Iron Company filed her accounts. The appellant filed a claim with the assignee based upon a judgment recovered against the assignor, and claimed a preference. Objection was made to the amount and to the claim for preference, and the court referred the matter to a referee, to take and state the account of the assignee, and to "try the question of the amount and right to preference of the claim" of the appellant. Upon the hearing before the referee the appellant offered in evidence a judgment roll in an action in the Supreme Court by him against the company, showing that his complaint was on a quantum meruit for $1,500 for work, labor, and services performed between the 1st day of December, 1899, and the 15th day of July, 1900; that the defendant appeared and answered, putting in issue the material allegations of the complaint; that the issues were tried on the 19th day of December, 1900, before a court and a jury, the defendant appearing and taking part in the trial; that a verdict was rendered in favor of the plaintiff for $1,400, upon which judgment was entered upon the same day for that amount and costs. The assignee named in the general assignment accepted the trust, but it does not appear whether or not he qualified. However, he was, on his own petition, relieved from the trust, and the present assignee was appointed, on the 19th day of May, 1902. The assignee was permitted to show, under the objection and exception of the appellant, that his judgment was not conclusive both as to the amount of liability and as to his right to a preference; that the company was not incorporated until the 25th day of January, 1900; that the services rendered by the appellant extended over a period of only three or four months during the year 1900, and consisted of traveling and inspecting raw material for purchase, recommending the purchase, and supervising the delivery thereof to and acceptance by the company; and that these services were rendered without employment by any officer of the company. It appeared, however, that the services were rendered with the knowledge of the officers of the company, and were beneficial to and were accepted by the company. It did not appear that the plaintiff was not employed by resolution of the board of directors. The minutes of the meeting of the board of directors were introduced in evidence by the assignee for the purpose of showing the absence of a resolution of employment, but upon ob-

jection they were excluded. The judgment roll offered in evidence by the appellant was received under the respondent's objection, and under a ruling that the referee was to consider the objections further, and, if he deemed them well founded, was to exclude it. His report shows that he did exclude the judgment roll, and gave the appellant an exception.

The learned counsel for the respondent contends that the judgment, having been rendered after the general assignment, was not competent evidence either of the amount of the claim, or of appellant's right to a preference, and that, even if it was prima facie evidence upon either point, it was overcome by the evidence introduced, the substance of which has been stated. We are of opinion that the judgment roll was not only competent evidence as to the amount of the appellant's claim, but that, in the absence of fraud or collusion in its recovery, it was conclusive evidence thereof against the assignee and creditors. Although the rule may be different in other jurisdictions, such we understand it to be in our state. Merchants' National Bank v. Hagemeyer, 4 App. Div. 52, 38 N. Y. Supp. 626; Pringle v. Woolworth, 90 N. Y. 502; Acker et al. v. Leland et al., 109 N. Y. 5, 15 N. E. 743. In Merchants' Nat. Bank v. Hagemeyer, supra, the question was necessarily involved and decided. There during the pendency of an action the defendant made an assignment for the benefit of creditors, and the assignee applied to be made a party. The motion was granted upon the theory that the judgment would be binding upon the assignee as to the amount of the indebtedness, and would be conclusive, in the absence of fraud and collusion.

The evidence introduced by the respondent falls far short of invalidating the judgment on the ground of fraud or collusion. It does show that the appellant was to be compensated by stock by one of the promoters of the corporation for his services anterior to the formation of the company, but this did not include the services rendered subsequent to the formation of the company. Although the period during which the appellant alleged in this complaint that the services were rendered embraced a period of several weeks prior to the incorporation of the company, yet he did not recover the amount demanded, and it is not to be inferred that he was awarded compensation for that period. The treasurer of the company, who gave the testimony which the respondent claims impeaches the judgment, had full knowledge of the pendency of the suit, and the assignor company appeared, and was defended by its attorneys. We are of opinion, however, that the judgment does not necessarily determine that the services were of a character which entitled the appellant's claim to a preference. The evidence given upon the trial forms no part of the judgment roll. The nature of the services is not definitely stated in the complaint. It was competent to show aliunde what the services were. We think we should not decide the question of a right to preference upon this record, and that there should be a rehearing of the claim.

The order should therefore be reversed, and the matter should be brought on for a further hearing at Special Term, or before a referee, as the court may direct, with costs to the appellant payable out of the funds in the hands of the assignee. All concur.