In re WHITNEY & KITCHEN. In re WHITNEY. In re GERAGHTY.

(Supreme Court, Appellate Division, First Department.   July 7, 1911.)

1. JUDGMENT (§ 675*)—CONCLUSIVENESS—PARTIES.

A firm of stockbrokers having made an assignment for the benefit of creditors, as a firm and individually, claimant brought suit against the firm and the assignee for damages for conversion of certain stock. Complaint was dismissed as to the assignee, but he continued in the action and took part in the argument of subsequent appeals, in which a judgment for plaintiff for a specified sum and interest was affirmed. *Held*, that the judgment was conclusive, in the absence of fraud and collusion, both as to the principal debt and interest, costs, and allowances against the assignee and all other persons interested in the partnership estate, as well as against the assignors; and that, notwithstanding a provision in the assignment that the property was assigned to pay all liabilities of the firm, with interest due, or to grow due thereon, the interest, costs, and allowances being a part of the judgment, the assignee could not allow the principal included in the judgment, and reject the interest, costs, and allowances.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 1190, 1191; Dec. Dig. § 675.*]

2. JUDGMENT (§ 582*)—EFFECT—MERGER OF JUDGMENT.

Where a cause of action has been reduced to judgment, the cause of action is merged in the judgment, so that whether it was recovered for a tort or on contract the recovery becomes a debt which the defendant is under obligation to pay.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. § 1079; Dec. Dig. § 582.*]

3. ASSIGNMENT FOR BENEFIT OF CREDITORS (§ 314*)—CLAIMS—RIGHT TO SHARE IN ESTATE OF INDIVIDUAL PARTNERS.

A firm having made an assignment of the firm assets for the benefit of creditors, the individual partners also made assignments of their individual property, which provided that the assignees should pay all debts and liabilities due or to become due from the firm, and from the assignors individually, and, if the residue of the proceeds should not be sufficient to pay the same in full, then to apply the residue ratably. *Held*, that where claimant recovered judgment against the firm and individual partners for conversion of corporate stock by the firm, and it did not appear that the partners individually acted or profited therefrom, claimant was entitled to the allowance of his claim in full, including costs, allowances, and interest against the estate of the firm, and, as to any balance remaining unpaid, was entitled to share equally in the estates of the individual partners with the individual creditors and creditors of the firm.

[Ed. Note.—For other cases, see Assignments for Benefit of Creditors, Cent. Dig. §§ 921–925; Dec. Dig. § 314.*]

In the matter of the assignment of Whitney and Kitchen, copartners, as a firm, and individually.   Submission of controversy between John F. McIntyre and Bayard L. Peck as assignee for the benefit of creditors of the firm, and of the partners individually.   Decree for plaintiff. See, also, 128 N. Y. Supp. 1034.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, MILLER, and DOWLING, JJ.

Thomas F. Gilroy, Jr., for claimant.
Daniel Burke, for assignee.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

DOWLING, J. Girard N. Whitney and James V. Geraghty were stockbrokers in the city of New York, doing business under the firm name and style of Whitney & Kitchen. On January 16, 1908, the firm made a general assignment for the benefit of its creditors, without preference, to Bayard L. Peck, and on January 25, 1908, the members of the firm made individual general assignments, without preference, to the same person, who duly qualified as assignee under all three assignments on January 17, 1908, February 24, 1908, and March 25, 1908, respectively. Thereafter, and on June 3, 1908, the claimant, John F. McIntyre, commenced an action against "Girard N. Whitney and James V. Geraghty, copartners, doing business under the firm name and style of Whitney & Kitchen, and Bayard L. Peck, as assignee for the benefit of creditors of said copartnership," to recover the sum of $30,337.50, with interest, upon allegations of the copartnership of defendants in the business of stock brokerage under the firm name of Whitney & Kitchen; of the making of the firm assignment before referred to; of the purchase by the copartnership, at plaintiff's special instance and request, of 500 shares of Amalgamated Copper Company stock at the then market price of $90 a share, including the commission of said copartnership; of the deposit by plaintiff with the copartnership of the sum of $5,000 in cash as margin upon said transactions and as part payment of the purchase price of said shares; of an agreement by the copartnership to advance for plaintiff the balance of the purchase price of said shares and to hold them as collateral security for such advances; of the further deposit by plaintiff with said copartnership at its demand and request between August 7 and October 23, 1907, of sums aggregating $25,000 as margins upon the transaction, and as partial repayment of the advances made by the copartnership. The complaint then further alleged:

"Seventh. On information and belief that on or about the 27th day of July, 1907, the defendants Whitney and Geraghty, composing the said copartnership as aforesaid, without the consent or knowledge of plaintiff and in violation of his ownership and of his rights in said stock, and in violation of the said agreement between plaintiff and said copartnership, disposed of said five hundred (500) shares of stock of the Amalgamated Copper Company and converted the same to their own use.

"Eighth (as amended). That prior to the commencement of this action, and on January 16, 1908, January 17, 1908, and January 19, 1908, plaintiff duly demanded from the defendants Whitney and Peck as assignee as aforesaid, and on January 21, 1908, plaintiff duly demanded from the defendant Geraghty the return to him of said stock and at said times duly offered to pay the balance due thereon, but said defendants and each of them failed and neglected and refused to return the same, and on information and belief said stock is not and was not then and has never since said conversion been in the possession of said defendants or of any of them."

It was further set forth that plaintiff did not know of the conversion of his stock until January 16, 1908; that the highest market price of the stock between July 27, 1907, and that date was $90.37½ per share; and that due proof of claim had been presented against the assigned estate of the copartnership to the assignee, who had rejected the same. Thereafter the complaint was dismissed by stipulation

against the defendant Peck, but he continued in the action and took part in the argument of the subsequent appeals. The suit having been sent to a referee to hear and determine, judgment was thereafter entered on his decision in favor of the plaintiff and against the defendants "Girard N. Whitney and James V. Geraghty, copartners composing the firm of Whitney & Kitchen" in the sum of $11,485.21 damages, together with $977.40 costs and disbursements. On appeal to this court the judgment was modified by increasing it to $36,356.53, with costs of the appeal amounting to $249.29. 139 App. Div. 557, 124 N. Y. Supp. 234. On appeal to the Court of Appeals the judgment of this court was affirmed, with costs. 201 N. Y. 526, 94 N. E. 1096. Included in the judgment in its present form is an allowance granted pursuant to the provisions of section 3253, Code Civ. Proc. Thereafter proof of claim of the amounts due the various judgments was duly filed with the assignee, wherein the plaintiff gave notice that he "claims that the copartnership of Whitney & Kitchen consisting of James V. Geraghty and Girard N. Whitney, general partners," is justly indebted to him in the amount thereof. At the same time he filed similar proofs of claims against the individual estates. The assignee rejected all of the claims against the copartnership estate beyond the principal thereof, with interest down to the time of the making of the assignment, and rejected in toto the claims against the individual estates.

The questions presented for decision are: (1) Are the judgments recovered a valid claim against the copartnership estate for the whole amount thereof with interest, or only for the amount admitted by the assignee? (2) Are the claims based on said judgments provable against the individual estates of the members of the firm, as well as against the copartnership estate; and, if so, are they to be preferred in payment over the other firm debts and equally with the claims of individual creditors of the individual estates?

[1, 2] To the first question we believe the answer must be returned that the judgments are final and conclusive upon the assignee and all other persons interested in the copartnership estate, as well as upon the assignors. So far as the interest is concerned, the members of the firm determined the question for themselves when they directed their assignee, by the terms of the assignment, to pay and discharge in full, so far as the funds were sufficient, "all the debts and liabilities now due or to grow due from the said copartnership, parties of the first part, with all interest moneys due or to grow due thereon." But even apart from this provision the assignee could not question the judgments, or seek to separate them and allow part and disallow the rest, when the judgments themselves are not attacked for fraud or collusion. "Where a cause of action has been prosecuted or reduced to judgment, the cause of action is swallowed up and merged in the judgment which is a higher and superior sort of security." 20 Am. & Eng. Ency. of Law (2d Ed.) 599. "After the recovery of this judgment, whether it was recovered for a tort or upon contract, the recovery became a debt which the defendant was under obligation to pay; and the law implied a promise or contract on his part to pay it. The previ-

ous cause of action whatever it was, became merged in the judgment." Gutta Percha Co. v. Houston, 108 N. Y. 278, 15 N. E. 402, 2 Am. St. Rep. 412. "I am of the opinion that, in the absence of any suggestion of fraud, collusion, undue advantage or mistake, a judgment recovered against an assignor for benefit of creditors, even after the making of the assignment, on a full litigation of the merits, and on a deliberate and intelligent decision by a court of competent jurisdiction, is conclusive on the assignee, as to the fact and amount of an indebtedness established thereby on a consideration existing before the assignment." Austin Abbott, Referee, in Ludington's Petition, 5 Abb. N. C. 322.

This is so even when the assignment is made pending the trial of the action. "Where during the pendency, and before the trial of an action, the defendant makes a general assignment for the benefit of creditors, and the action after a trial at which the defendant appears and defends results in a judgment in favor of the plaintiff, the judgment in the action is not only competent evidence as to the amount of the plaintiff's claim against the assigned estate, but, in the absence of fraud or collusion in the recovery of the judgment, is conclusive evidence thereof against the assignee and the defendant's other creditors." In re Roberts, 98 App. Div. 155, 90 N. Y. Supp. 731. So in Merchants' Nat. Bank v. Hagemeyer, 4 App. Div. 52, 38 N. Y. Supp. 626, an assignee was allowed to become a party to an action where the assignment was made after the action was commenced, on the ground that the judgment to be rendered would be conclusive upon the assignee, whether made before or after the assignment. We are of the opinion, therefore, that whatever was incidental to the recovery of the judgment and involved therein as a necessary result of the litigation, including the costs and allowance therein, as well as the interest accruing because of the delay, became final and conclusive as against not only the assignors, but their assignee and creditors, in the absence of fraud and collusion. The present record not only fails to disclose the presence of such elements, but affirmatively establishes a most vigorous opposition to plaintiff's claim, carried to the court of last resort, with the assignee participating in the appeals.

[3] The second question presented it seems to us necessitates the drawing of the distinction which was pointed out in Matter of Blackford, 35 App. Div. 333, 54 N. Y. Supp. 972 (relied on by claimant), between a tort pure and simple and one arising out of the contractual relationship between the parties. It sufficiently appears from the summary heretofore made of the original complaint that the tort alleged was that of the copartnership, and that it arose out of a disregard of the contractual rights of plaintiff by the partnership. There is no allegation of any wrongful act of the individual members of the firm. No one of them is charged to have unlawfully converted or disposed of plaintiff's property. The claim is that the copartnership converted the stock, and the referee has found that the copartnership unlawfully delivered plaintiff's stock to another firm in payment of a copartnership debt; the copartnership being credited with the value thereof on the books of the clearing house of the New York Stock

Exchange. This therefore is a joint debt, arising out of a violation by a copartnership of its contractual duties, with no profit accruing therefrom to the individual members but solely to the copartnership. Ordinarily it would come under the rule of equity that joint creditors must look to the joint estate, and individual creditors to the separate estate of the partners, based on the principle that the joint creditors have extended credit on the faith of the firm property and the individual creditors on the faith of the separate estates of the partners. Matter of Blackford, supra. The cases relied upon by plaintiff as sustaining his contention that the liability herein is joint and several are either those wherein an individual liability has been created by members of a firm individually indorsing the firm notes, or such exceptional cases as Morgan v. Skidmore, 55 Barb. 263, affirmed 3 Abb. N. C. 92, where a member of a firm had personally made a false representation as to the solvency of his firm and the condition of the estate of one of the deceased members, in reliance upon which plaintiff had issued a draft for £12,000. It was there held that judgment could be obtained against the estate of the member making such representation, even after plaintiff had obtained judgment against the firm for the original amount due, nor was there anything inconsistent in the two suits, for they were not suing as creditors of the deceased, when his liability would be joint, but upon his representation, whereon his liability was personal.

But in this case the individual members of the firm have extended the usual rule by each directing in their individual assignments that their assignee shall pay and discharge in full "all the debts and liabilities now due or to grow due from the said copartnership of Whitney & Kitchen and from the said party of the first part, with all the interest moneys due or to grow due thereon; and, if the residue of said proceeds shall not be sufficient to pay the said debts and liabilities and interest moneys in full, then to apply the said residue of said proceeds to the payment of said debts and liabilities ratably and in proportion." It was held in Mills et al. v. Parkhurst et al., 9 N. Y. Supp. 109,[1] that the application of the equitable rule by which partnership debts are primarily payable out of partnership assets and individual debts out of individual assets, with a preference to each class of debts over the other as respects the distribution of the corresponding fund, would be prevented only by express and unmistakable directions to the contrary in the instrument of assignment, but that when the intention of the assignor was clearly expressed that no distinction was to be made between his individual debts and those which arose from his connection with the firm that intention must be effectuated. Such is the case with the assignment now under consideration.

It follows, therefore, that the assignee must allow the claim of John F. McIntyre at its full amount, including costs, allowance, and accrued interest, against the copartnership estate of Whitney & Kitchen, and that as against the individual estates of Girard N.

---

[1] Reported in full in the New York Supplement; reported as a memorandum decision without opinion in 56 Hun, 640.

Whitney and James V. Geraghty the claimant is entitled to share equally therein with the individual creditors, and the creditors of said firm, to the extent of the balance remaining due upon his claim against the firm.

Judgment is directed accordingly without costs.

McLAUGHLIN and LAUGHLIN, JJ., concur.

MILLER, J. I concur in result on the last ground stated in the opinion of Mr. Justice DOWLING and also on the authority of Matter of Blackford, 35 App. Div. 333, 54 N. Y. Supp. 972.

INGRAHAM, P. J. The firm of Whitney & Kitchen, composed of Girard N. Whitney and James V. Geraghty, were stockbrokers doing business in the city of New York. This firm had purchased on July 27, 1907, for account of the plaintiff, certain stocks on margin, but had deposited the stock without plaintiff's consent, whereupon plaintiff commenced an action against the said copartners, alleging in his complaint that the said copartners had sold the said stock without the consent or knowledge of the plaintiff, and "in violation of his ownership and of his rights in said stock   *   *   *   and converted the same to their own use, that plaintiff had subsequently demanded the return of said stock from said copartners and had duly offered to pay the balance due thereon, but that said copartners had failed and refused to return the same, and that plaintiff had been damaged thereby in the sum of $45,337.50, less $15,000 of advances by said copartnership remaining unpaid by plaintiff, and that the copartners were indebted to plaintiff in the sum of $30,337.50, with interest thereon from July 27, 1907. The defendants in that action interposed an answer, and upon the trial thereof before a referee plaintiff obtained a judgment in his favor for $12,462.61. Plaintiff appealed from said judgment, and this court modified the same by increasing the amount to which plaintiff was entitled to $36,356.53. The defendants in that action appealed from such modification to the Court of Appeals, where the judgment of this court was affirmed.

The referee found that the said copartnership of Whitney & Kitchen had purchased the stock for account of the plaintiff on July, 1907, and had actually received the stock on July 29th, and on the same day, without the knowledge or consent of the plaintiff, had delivered the said stock to a stock exchange firm in partial repayment of a loan of stock then due to the firm to which it was delivered from the said copartnership of Whitney & Kitchen, and that on July 29, 1907, said Whitney & Kitchen converted the said stock to their own use; that on January 16, 1908, the said copartnership of Whitney & Kitchen made a general assignment to Bayard L. Peck for the benefit of creditors.

This general assignment is made part of the submission. By it the assignee is directed to sell the copartnership property assigned to him and to convert the same into money, and to collect all debts and demands due to the said copartnership, and out of the proceeds of

such sale and collections, after payment of the expenses, costs, and charges of executing the trust, to pay and discharge all debts and liabilities of said copartnership with interest, and, if said proceeds should not be sufficient to pay said debts, liabilities, and interest in full, then to apply the said proceeds to the payment of said debts and liabilities ratably and in proportion. On the 25th day of January, 1908, Girard N. Whitney, one of said copartners of Whitney & Kitchen, executed an assignment of all his individual property to Bayard L. Peck, and on the same day James V. Geraghty, the other copartner, also made an assignment of his individual property to the said Bayard L. Peck. By these individual assignments the assignee was directed to sell the property assigned to him and collect the debts due to the assignors, and, after paying the expenses, costs, and charges of the execution of the trust, to "pay and discharge in full, if the residue of said proceeds are sufficient for that purpose, all the debts and liabilities now due or to grow due from the said copartnership of Whitney & Kitchen and from the said party of the first part, with all the interest money due or to grow due thereon; and, if the residue of the said proceeds shall not be sufficient to pay the said debts and liabilities and interest in full, then to apply the said residue of said proceeds to the payment of said debts and liabilities ratably and in proportion."

After the assignment for the benefit of creditors and on April 25, 1908, the plaintiff filed with the assignee a proof of claim against the copartnership, which claim the assignee rejected. After the affirmance of the judgment by the Court of Appeals on March 24, 1911, the plaintiff again filed with the assignee a proof of claim as against the copartnership of Whitney & Kitchen on the judgments of this court and the Court of Appeals. This claim the assignee rejected, but stated that he would pay on the amount found to be due by the referee with interest to the date of the assignment. The plaintiff then filed with the assignee proof of claim on the judgments against the assignee of the individual property of the two copartners, claiming to be entitled to share in the proceeds of the individual property of the copartners as well as in the property of the copartnership, which claim the assignee has rejected.

After stating the claims of the respective parties, the submission is as follows:

"The controversy hereby submitted for decision is whether or not, upon the foregoing facts, the claimant is entitled to prove and the assignee is bound to allow the claims of the said John F. McIntyre, based upon the said judgments, as claims against the estate of Girard N. Whitney individually and against the estate of James V. Geraghty individually as well as against the estate of the copartnership of Whitney & Kitchen to the full amount thereof, so as to entitle the claim herein to be proved in full as a joint obligation of the firm and as the individual obligation of each partner; and whether or not the said claimant is entitled to prove as against any of said estates so much of his claim as is for the costs and allowance on the action, and the claimant asks an order of this court allowing his said claim as above set forth."

I think this claim as established by the judgments of this court and the Court of Appeals was a copartnership liability. The action was

against the members of the copartnership. The complaint alleges a. conversion by the copartners jointly, and also a breach of contract. The referee found that the stock purchased for the plaintiff was. delivered by the copartners to discharge a copartnership obligation, and that act, delivery of the stock, which was the property of the plaintiff, was as between the copartnership and the plaintiff a conversion. It is claimed that the plaintiff could not maintain an action against each copartner individually for a conversion. No act of either of the copartners was alleged as a conversion, nor did the referee find that either partner converted the plaintiff's property to his own use. The stock was delivered by the copartnership to discharge a copartnership obligation. The only relation of either of the copartners to the plaintiff was the obligation that they assumed to him as brokers to purchase stock for him and hold the same for him, subject to a lien on the stock purchased for the advances they had made in making the purchase. The relation was purely contractual. When the copartnership disposed of the stock purchased for plaintiff for its own purposes, the conversion of the stock was a copartnership act for the benefit of the copartnership for which the copartnership as such was liable. The right of the plaintiff to the stock therefore depended upon the contract with the copartnership, and it was a breach of that contract that constituted the conversion which imposed a liability upon the copartnership. The distinction between this case and Roberts v. Johnson, 58 N. Y. 613, and Matter of Blackford, 35 App. Div. 330, 54 N. Y. Supp. 972, is obvious. In determining that the principle on which equity founds the rule that joint creditors must look to the joint estate and individual creditors to the separate estate of the partners, Judge Cullen in the latter case says:

"This reasoning certainly does not obtain in a case like the present in which there was no contractual relation between the parties and the act of the defendant was a tort pure and simple."

In the case at bar there were contractual relations between the parties, and the liability arose out of a breach of that contract which imposed a joint liability upon, the copartners.

The plaintiff presented his claim to the defendant as a liability of the copartnership. The defendant rejected the claim, whereupon the plaintiff brought an action against the copartners, alleging a just liability, and making the assignee a party. He recovered against the copartners, but the complaint as against the assignee was dismissed. There was thus established a debt or liability of the copartnership. The amount of that debt was the amount of that judgment. The firm assignment directed the assignee to apply the proceeds of the assigned estate to pay and discharge "all the debts and liabilities now due or to grow due from the said copartnership * * * with all interest and moneys due or to grow due thereon." The costs and interest on the amount found due to the time of payment was, I think, within the terms of the assignment, and plaintiff is entitled to have the amount of the judgments and interest thereon to that time allowed as the amount of his claim which he is entitled to

recover if the proceeds are sufficient and if not then his proportion thereof. There is also the question as to whether plaintiff is entitled to prove his claim as against the individual estate of the copartners.

It is settled that the assignee is bound to strictly follow the assignment in the administration of the assigned estate. Unless the assignment is set aside, it must control as to the persons entitled to share in the proceeds of the assigned property, and, if the individual assignment provides for the discharge of the firm liabilities out of the individual property of each assignor, then I can see no reason why plaintiff is not entitled to have his proportion of the individual property applied to the payment of his claim against the copartnership. The individual assignments were executed some time after the copartnership assignment and were entirely separate instruments. The fact that the same assignee was named is of no importance. They provided that the assignee should pay and discharge in full "all the debts and liabilities now due or to grow due from the said copartnership of Whitney & Kitchen and from the said party of the first part." The assignments thus placed upon the same footing the debts and liabilities of the firm and of the individual assignor, and, if the proceeds were not sufficient to pay said debts and liabilities in full, the assignee was directed "then to apply the said residue of said proceeds to the payment of said debts and liabilities ratably and in proportion." If the copartnership had made no assignment, I suppose there would be no doubt but that the firm creditors would have been entitled to have their claims paid in the same proportion as the claim against the assignor individually, and it can make no difference that the assignor had before making the assignment joined in an assignment of copartnership property which was also to be applied to the payment of the claims against the copartnership. This is not a case where a court of equity has power to marshal assets in the absence of specific direction as to the manner in which they should be disposed of, but here the assignor has by a specific provision directed the assignee to pay the debts and liabilities of the firm of which he was a member and his individual liabilities "ratably and in proportion."

I think, therefore, that the plaintiff was entitled to have his claim allowed by the assignee of the individual estate at its full amount and entitled to receive the same proportion of the amount due him as the individual creditors recovered. Of course, if he was paid by the assignee of the firm property the full amount of his claim, he would not be entitled to receive any part of the estate of the individual partners or more of the individual estate than would be sufficient to pay his claim in full after applying the dividend received for the firm property.

Judgment should therefore be directed for the plaintiff in accordance with the views expressed, with costs.